IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RADIOLOGIX, INC., and RADIOLOGY AND NUCLEAR MEDICINE IMAGING PARTNERS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 15-4927-DDC |
| RADIOLOGY AND NUCLEAR MEDICINE, LLC, | ) ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter comes before the court upon plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 47). Defendant opposes the motion. For the reasons stated below, the motion is granted.

**I.     Background**

Plaintiff Radiologix, Inc. is a wholly owned subsidiary of RadNet, Inc., a corporation that manages physician-owned radiological services practices, among other things.  Plaintiff Radiology and Nuclear Medicine Imaging Partners, Inc. ("RNMIP") is a wholly owned subsidiary of Radiologix.  Defendant Radiology and Nuclear Medicine, LLC ("RNM") is a physician-owned radiology practice. Pursuant to a long-term management services arrangement, RNM has been managed by Radiologix or its predecessors in interest.

In the proposed amended complaint, plaintiffs seek to add claims of conversion and unjust enrichment or quantum meruit against RMN.  They also seek to add a claim against each of the individual physician-owners of RNM for breach of contract.  Finally, they seek to add a claim against a former employee for tortious interference with contractual relations.

## II. Discussion

Fed. R. Civ. P. 15 governs the procedure for amending the pleadings. At this juncture, plaintiffs may amend their complaint by consent of the opposing party or by leave of the court.[1] When leave of the court is required, the court may refuse to grant leave "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[2] Leave should freely be given when justice requires.[3] Here, the defendant opposes the amendments on the grounds of futility.

The court may deny a proposed amendment on the basis of futility "if the amendment would not withstand a motion to dismiss or otherwise fails to state a claim upon which relief may be granted."[4] When determining whether an amendment is futile, the court analyzes the proposed amendment as if it were before the court on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[5] Therefore, the court will only deny an amendment on the basis of futility when factual allegations fail to "state a claim to relief that is plausible on its face,"[6] or when an issue of law is dispositive.[7] A pleading "does not need detailed factual allegations," but does need to

---

[1] Fed. R. Civ. P. 15(a)(2).

[2] *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (quoting *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005)).

[3] Fed. R. Civ. P. 15(a)(2).

[4] *Wenner v. Bank of Am., NA*, 637 F.Supp.2d 944, 950 (D.Kan.2009) (internal quotations omitted) (quoting *Stewart v. Bd. of Comm'rs for Shawnee Cnty., Kan.*, 216 F.R.D. 662, 664 (D.Kan.2003)).

[5] *Collins v. Wal–Mart, Inc.*, 245 F.R.D. 503, 507 (D.Kan.2007) (citing *Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D.Kan.2001)).

[6] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[7] *Collins*, 245 F.R.D. at 507 (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

provide grounds for entitlement to relief and requires "more than labels and conclusions."[8] Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]  The party opposing the proposed amendment bears the burden of establishing its futility.[11]

### A. Conversion

Plaintiffs seek to add a conversion claim against RNM.  In paragraphs 37 and 38 of the proposed amended complaint, plaintiffs allege RNM had previously authorized RNMIP to collect and deposit all professional revenues that RNM's physicians generated into RNM's bank account, and that RNM also had executed a "revocable standing transfer order," which authorized the bank periodically to transfer the entire balance of the bank account into a separate bank account owned solely by RNMIP.[12]  In paragraph 54 of the proposed amended complaint, plaintiffs allege that RNM "engaged in the unauthorized assumption or exercise of the right of ownership over funds belonging to RadNet, to the exclusion of RadNet's rights," by revoking the standing transfer order and by instructing its bank "to limit RadNet Employee access to RNM accounts to inquiry only."[13]

---

[8] *Twombly*, 550 U.S. at 555.

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Id.*

[11] *Boykin v. CFS Enter., Inc.*, No. 08–2249, 2008 WL 4534400, at * 1 (D.Kan. Oct. 6, 2008).

[12] Mot. for Leave to File Second Am. Compl., ECF No. 47, Attach. 1 at 10.

[13] *Id.* at 13.

Defendant initially asserts that plaintiffs have failed to state a claim for conversion because their conclusory allegations fail to meet the pleadings requirements of *Twombly* and *Iqbal*. Defendant further argues that plaintiffs have failed to state a valid cause of action for conversion under Kansas law because such a claim for funds that are allegedly owed to another party will not lie against a debtor.

In Kansas, conversion is defined as an "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another."[14] Plaintiffs' proposed amended complaint alleges that the defendant converted RadNet's funds, without authorization, for its own use. The court finds that the facts alleged by plaintiffs are sufficient to state a plausible claim of conversion against RMN. RadNet has sufficiently alleged that, pursuant to the agreement between the parties, it was given the right to possession of the monies RNM received. The court is not persuaded that plaintiffs' claim is precluded under Kansas law based upon the contention that a debtor-creditor relationship existed between the parties.[15] The allegations do not suggest the presence of a debtor-creditor relationship.

B.  Unjust Enrichment or Quantum Meruit

Plaintiffs next seek to add a claim of unjust enrichment or quantum meruit against RMN. In paragraphs 59 through 61 of the proposed amended complaint, plaintiffs allege that RadNet conferred a benefit upon RMN by providing services, that RNM had an appreciation or knowledge of the benefit that RadNet's services conferred, and that RNM accepted and retained the benefit without payment of the value of RadNet's services.[16]

---

[14] *Temmen v. Kent-Brown Chevrolet Co.*, 227 Kan. 45, 605 P.2d 95, 99 (1980).

[15] See *Ford v. Guarantee Abstract & Title Co.*, 220 Kan. 244, 553 P.2d 254, 266 (1976).

[16] ECF No. 47, Attach. 1 at 14.

Defendant contends that plaintiffs have failed to allege sufficient facts to assert a claim for unjust enrichment or quantum meruit. The court disagrees. The basic elements of a claim upon the theory of unjust enrichment or quantum meruit are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."[17] Plaintiff has alleged enough facts to state a plausible claim for unjust enrichment or quantum meruit under Kansas law. The factual content in the proposed amended complaint is sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

C.   Breach of Contract Against Individual Physicians

Plaintiffs next seek to add a claim against the individual physician members of RNM for breach of contract. Plaintiffs allege that the nineteen physicians breached their employment agreements with RMN and damaged Radiologix as a third-party beneficiary of those agreements by causing RNM to terminate the service agreement.[18]

Defendant contends that plaintiffs have failed to state a claim against the individual physicians because Kansas statutory law precludes it. Defendant argues on behalf of the physician-owners that the individual physicians cannot be held liable for breaching their employment agreements by voting in favor of the termination of the service agreement because "the exercise of voting rights by members of a duly formed Kansas limited liability company

---

[17] *J.W. Thompson Co. v. Welles Products Corp.*, 243 Kan. 503, 758 P.2d 738, 745 (1988).

[18] ECF No. 47, Attach. 1 at 14-15.

does not subject those members to personal liability for the debts or contractual obligations of the company."[19]

The court finds that plaintiffs have stated a plausible claim against the individual physicians. As pointed out by plaintiffs, Radiologix seeks to hold each physician liable for breach of the employment agreement that each physician entered into with RMN, not for the breach of the contractual obligations of RNM. Plaintiffs, as third-party beneficiaries of the employment agreements, are alleging that the physicians violated their promises not to interfere with Radiologix. As a result, plaintiffs have stated a plausible claim for breach of contract against the individual physicians.

D.  Tortious Interference Against David Smith

Plaintiff also seeks to add a claim for tortious interference with contractual relations against David Smith, a former employee of Radiologix and a current consultant to RNM. Plaintiffs make the following allegations concerning Mr. Smith: (1) at one time, he worked for Radiologix and was responsible for administering the service agreement; (2) his employment placed him in a unique position to influence RNM against RadNet; (3) he sought and accepted an opportunity to work for RNM so he could interfere with RNM's contractual relationship with plaintiffs and divert RMN's business away from plaintiffs; (4) he caused RNM to breach the service agreement; and (5) his conduct was willful and undertaken with the intent to cause financial injury to RadNet.[20]

Defendant contends that the plaintiffs have failed to state a claim for tortious interference under Kansas law because of the conclusory nature of plaintiffs' allegations. Defendant asserts

---

[19] Def.'s Mem. in Oppo. to Plaintiff's Mtn. for Leave to File Second Am. Comp., ECF 54 at p. 7.

[20] ECF No. 47, Attach. 1 at 12, 16.

that plaintiffs have failed to allege sufficient facts to support a reasonable inference that Mr. Smith intentionally procured RNM's termination of the service agreement.

After reviewing plaintiffs' allegations, the court is persuaded that a plausible claim for tortious interference has been stated under Kansas law.  The allegations made by plaintiff are adequately stated and are specific enough to allow the court to draw the reasonable inference that Mr. Smith is liable for the misconduct alleged.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 47) is hereby granted. Within seven (7) calendar days from the date of this order, plaintiffs shall file their second amended complaint (ECF No. 47, Attach. 1) as a separate docket entry in this case.

**IT IS SO ORDERED.**

Dated this 6th day of January, 2016, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
