IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RADIOLOGIX, INC. and RADIOLOGY AND NUCLEAR MEDICINE IMAGING PARTNERS, INC.,<br><br>      **Plaintiffs,**<br><br>v.<br><br>RADIOLOGY AND NUCLEAR MEDICINE, LLC, et al.,<br><br>      **Defendants.** | Case No. 15-4927-DDC-KGS |

**MEMORANDUM AND ORDER**

Plaintiffs Radiologix, Inc. ("Radiologix") and Radiology and Nuclear Medicine Imaging Partners, Inc. ("RNMIP") bring this lawsuit against defendants Radiology and Nuclear Medicine, LLC ("RNM") and 19 individual physicians ("the Physician Defendants"). The Physician Defendants have filed a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c) (Doc. 92), against the only claim that plaintiffs assert against them—one for breach of contract. Plaintiffs have submitted a Response (Doc. 95), opposing the Physician Defendants' motion. And, the Physician Defendants have filed a Reply (Doc. 98). After considering the parties' arguments, the court denies the Physician Defendants' motion. The court explains why below.

    **I.**     **Factual Background**

The following facts are taken from plaintiffs' Second Amended Complaint (Doc. 61), accepted as true, and viewed in the light most favorable to them. *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1240 (10th Cir. 2000) (explaining that, on a motion for judgment on the pleadings, the court must "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff" (citation omitted)).

1

Plaintiff Radiologix is a national provider of imaging services based in Dallas, Texas. Defendant RNM is a Kansas limited liability company and physician-owned radiology practice based in northeast Kansas. Since 1997, plaintiff Radiologix or one of its predecessors-in-interest has provided management services to defendant RNM under a long-term management service agreement.

Each of defendant RNM's physician-owners has signed a "Physician Employment Agreement" with defendant RNM. In 1997, defendant RNM's physician-owners signed a "Physician Employment Agreement" that named American Physician Partners, Inc. ("APPI") as a third-party beneficiary. *See* Doc. 61-1 ["the 1997 Agreement"]. APPI later merged with plaintiff Radiologix. The 1997 Agreement provided, in pertinent part:

> F.    Physician acknowledges that Employer [who is defendant RNM] has entered into a Service Agreement dated as of June 27, 1997 with American Physician Partners, Inc., a Delaware corporation ("APPI") (as may be amended from time to time, the "Service Agreement"). Physician further acknowledges that in accordance with the provisions of the Service Agreement, APPI will have third party beneficiary rights to enforce certain provisions of this Agreement.
>
> . . . .
>
> 2.12   Covenant Not to Compete or Solicit.
>
> (a) Physician acknowledges that, during the term of this Agreement, (i) Employer will introduce Physician to Employer's patients and to the medical community and (ii) Physician will receive substantial direct and indirect benefits from the existence of the Service Agreement, both of which will enable Physician to develop his or her professional reputation in a manner which, if Physician terminates his or her relationship with Employer, could be used to the financial detriment of Employer and APPI. Accordingly, during the term of this Agreement and for a period of twenty-four (24) months thereafter, Physician covenants as follows:
>
> . . . .

>> (ii) that Physician will not, directly or indirectly . . . (B) whether for himself or any other person or entity, . . . divert or take away, or attempt to . . . divert or take away . . . business or clients of . . . APPI . . . or (E) disrupt, damage, impair or interfere with the business of . . . APPI.

Doc. 61-1 at 1, 6.

In 2002, plaintiffs and defendant RNM executed an Amended and Restated Service Agreement ("2002 Amended and Restated Service Agreement"). Under the 2002 Amended and Restated Service Agreement, plaintiffs agreed to provide certain management services to defendant RNM in exchange for certain fees.

Since the execution of the 2002 Amended and Restated Service Agreement, each of defendant RNM's current physician-owners has signed another "Physician Employment Agreement" with defendant RNM that names plaintiff Radiologix as a third-party beneficiary. *See* Doc. 61-2 ["the 2013 Agreement"]. The 2013 Agreement provides, in pertinent part:

> E. Physician acknowledges that RNM has entered into an Amended and Restated Service Agreement dated July 1, 2002 with American Physician Partners, Inc., a Delaware corporation ("APPI") (as may be amended from time to time, the "Service Agreement"). APPI changed its name to "Radiologix, Inc." (RDLX), September, 1999. Physician further acknowledges that in accordance with the provisions of the Service Agreement, RDLX will have third party beneficiary rights to enforce certain provisions of this Agreement.
>
> . . . .
>
> 2.12   Covenant Not to Compete or Solicit.
>
> (a) Physician acknowledges that, during the term of this Agreement, (i) RNM will introduce Physician to RNM's patients and to the medical community and (ii) Physician will receive substantial direct and indirect benefits from the existence of the Service Agreement, both of which will enable Physician to develop his or her professional reputation in a manner which, if Physician terminates his or her relationship with RNM, could be used to the financial detriment of RNM and RDLX. Accordingly, during the term of this Agreement and for a period of twenty-four (24) months thereafter, Physician covenants as follows:

>  . . . .
>
>  (ii) that Physician will not, directly or indirectly . . . (B) whether for himself or any other person or entity, . . . divert or take away, or attempt to . . . divert or take away . . . business or clients of . . . RDLX . . . or (E) disrupt, damage[,] impair or interfere with the business of . . . RDLX.

Doc. 61-2 at 1, 5, 6.

In the fall of 2014, defendant RNM's legal counsel began sending letters to plaintiffs accusing them of materially defaulting on their obligations under the 2002 Amended and Restated Service Agreement. The 2002 Amended and Restated Agreement allows plaintiffs a 60-day cure period after receiving written notice of any alleged material default. It also precludes defendant RNM from terminating the 2002 Amended and Restated Service Agreement unless a truly material default continues for 60 days after written notice. Also, under the 2002 Amended and Restated Service Agreement, termination of the contract requires an affirmative vote of two-thirds of the interests of the equity holders of defendant RNM.

This lawsuit arises from defendant RNM's termination of the 2002 Amended and Restated Service Agreement. Plaintiffs assert one claim against the Physician Defendants—a breach of contract claim in Count IV of the Second Amended Complaint. Plaintiffs allege that the Physician Defendants individually breached their respective Physician Employment Agreements with defendant RNM and damaged plaintiff Radiologix as a third-party beneficiary of those agreements by causing defendant RNM to terminate the 2002 Amended and Restated Service Agreement.

## II.     Legal Standard

A party may move for judgment on the pleadings under Fed. R. Civ. P. 12(c) after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). Courts evaluate a

Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion to dismiss. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002) (citing *Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000)).

The court will grant a motion for judgment on the pleadings only when the factual allegations in the Complaint fail to "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Alvarado v. KOB–TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

Here, the court considers the 1997 and 2013 Agreements because plaintiffs refer to them in the Second Amended Complaint and they have attached these documents to the Second Amended Complaint as exhibits. *See* Doc. 61 at 6–9 (Complaint ¶ 9) (referencing the 1997 and 2013 Agreements); Doc. 61-1 (the 1997 Agreement); Doc. 61-2 (the 2013 Agreement). The

5

1997 and 2013 Agreements also are central to plaintiffs' breach of contract claim in Count IV, and the parties do not dispute their authenticity.

### III.     Analysis

The Physician Defendants seek judgment on the pleadings under Fed. R. Civ. P. 12(c), against the breach of contract claim asserted against each of them, individually, in Count IV of the Second Amended Complaint. Count IV alleges that each Physician Defendant signed a Physician Employment Agreement that obligates them "not, directly or indirectly . . . [to] divert or take away, or attempt to . . . divert or take away . . . business or clients of . . . [plaintiff Radiologix] . . . or . . . disrupt, damage[,] impair or interfere with the business of . . . [plaintiff Radiologix]." Doc. 61-2 at 6. Plaintiffs allege that the Physician Defendants have breached their respective Physician Employment Agreements because they caused defendant RNM to terminate the 2002 Amended and Restated Service Agreement, thus diverting or taking away business from plaintiff Radiologix and disrupting, damaging, impairing, and interfering with plaintiff Radiologix's business.

The Physician Defendants argue that Count IV fails to state a claim against them under Kansas law. In diversity cases, like this one, the court applies the substantive law of the forum state, including its choice of law rules. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1236 n.7 (10th Cir. 2014). In Kansas, when the parties to a contract have entered an agreement that incorporates a choice of law provision, Kansas courts generally apply the law chosen by the parties to control their agreement. *Brenner v. Oppenheimer & Co. Inc.*, 44 P.3d 364, 375 (Kan. 2002).

Here, the Physician Defendants assert that Kansas law applies to the breach of contract claim asserted in Count IV because the Physician Employment Agreements provide that Kansas

6

law governs them. *See* Doc. 61-1 at 12 (stating in section 7.9 of the contract that "[t]his Agreement shall be interpreted in accordance with and governed by the laws of the State of Kansas"); Doc. 61-2 at 12 (same). Plaintiffs never dispute that Kansas law applies. The court thus applies Kansas law to the breach of contract claim asserted in Count IV.

The Physician Defendants assert that Kansas law does not allow plaintiffs to hold them individually liable for breaching their respective Physician Employment Agreements based on corporate actions taken by defendant RNM that the Physician Defendants may have authorized through member votes. The Physician Defendants concede that plaintiff Radiologix is a third-party beneficiary of the Physician Employment Agreements. And, under Kansas law, a "third-party beneficiary can enforce the contract if he is one who the contracting parties intended should receive a direct benefit from the contract." *Fasse v. Lower Heating & Air Conditioning, Inc.*, 736 P.2d 930, 932 (Kan. 1987). Plaintiff Radiologix argues that the Physician Defendants violated their promises not to interfere with its business, and thus plaintiff Radiologix may assert a breach of contract claim as a third-party beneficiary to those Physician Employment Agreements that contained such promises.

The Physician Employment Agreements recognize that the Physician Defendants "will receive substantial direct and indirect benefits" from the Agreement "which will enable Physician to develop his or her professional reputation in a manner which, if Physician terminates his or her relationship with [defendant] RNM, could be used to the financial detriment of [defendant] RNM and [plaintiff Radiologix]." *See* Doc. 61-2 at 5 (the 2013 Agreement); *see also* Doc. 61-1 at 6 (containing similar language in the 1997 Agreement). To that end, the Physician Defendants agreed to various non-competition and non-solicitation provisions in the Physician Employment Agreements. *See* Doc. 61-1 at 6 (section 2.12(a)(i)–(ii)); Doc. 61-2 at 5–

7

6 (section 2.12(a)(i)–(ii)).  These provisions include prohibitions against diverting or taking away plaintiff Radiologix's business or disrupting, damaging, impairing, or interfering with plaintiff Radiologix's business.

The Physician Defendants contend that no reasonable interpretation of these prohibitions could include a restriction of the Physician Defendants' voting rights as limited liability members of defendant RNM, a Kansas limited liability company.  Indeed, under Kansas law, a corporate officer or director, when conducting business on behalf of a corporation, is acting on the corporation's behalf, not his own.  *Diederich v. Yarnevich*, 196 P.3d 411, 418 (Kan. Ct. App. 2008).  Kansas law also prohibits holding a member or manager of a limited liability company personally liable "for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company."  Kan. Stat. Ann. § 17-7688(a).

But, here, plaintiffs do not seek to hold the Physician Defendants individually liable for corporate acts taken by defendant RNM, *i.e.* its alleged breach of the 2002 Amended and Restated Service Agreement.  Instead, plaintiffs seek to hold the Physician Defendants individually liable for their own actions—conduct, plaintiffs contend, that damaged plaintiff Radiologix as a third-party beneficiary of a separate contract:  the respective Physician Employment Agreements that each of the Physician Defendants individually signed.  The Physician Defendants cite no Kansas law that makes corporate members immune from liability under a contract executed in the member's individual capacity when the acts that allegedly form the breach of that contract were taken in a corporate capacity.

And, even if Kansas law prohibited such a claim, the Second Amended Complaint does not limit the alleged acts of the Physician Defendants to ones they took in their corporate

8

capacity. The Physician Defendants read the Second Amended Complaint too narrowly. They contend that none of the actions alleged in the Second Amended Complaint are separate from the Physician Defendants' corporate duties as members of defendant RNM. They assert that the Second Amended Complaint alleges only that the Physician Defendants caused defendant RNM to breach the 2002 Amended and Restated Service Agreement by casting votes to terminate that agreement in their capacity as members of defendant RNM. But these are not the only allegations in the Second Amended Complaint that, if true, could support Count IV's claim for breach of contract against the Physician Defendants.

For example, the Second Amended Complaint also alleges that the Physician Defendants caused legal counsel to send letters to plaintiffs accusing them of materially defaulting on their obligations under the 2002 Amended and Restated Service Agreement. Doc. 61 at 9. It also alleges that the individual Physician Defendants unlawfully caused defendant RNM to breach the 2002 Amended and Restated Service Agreement. *Id.* at 15. The court cannot conclude as a matter of law at this stage of the proceedings that the alleged actions taken by the Physician Defendants were taken in their corporate capacities only as members of defendant RNM—and not in their individual capacities. Instead, on a motion for judgment on the pleadings, the court must accept the facts alleged in the Second Amended Complaint as true and construe them in the light most favorable to plaintiffs. Under this standard and on the facts alleged here, the court concludes that plaintiffs have stated a plausible claim for relief for breach of contract against the Physician Defendants. The court thus denies the Physician Defendants' Motion for Judgment on the Pleadings.

## IV.     Conclusion

For the reasons explained above, the court holds that Count IV of the Second Amended Complaint states a plausible claim for relief under Kansas law.  The court thus denies the Physician Defendants' Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion for Judgment on the Pleadings (Doc. 92) is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of March, 2017, at Topeka, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**