IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RADIOLOGIX, INC., and )
RADIOLOGY AND NUCLEAR )
MEDICINE IMAGING PARTNERS, )
)
        Plaintiffs, )
)
v. )   Case No. 15-4927-DDC
)
RADIOLOGY AND NUCLEAR )
MEDICINE, LLC, *et al.*, )
)
        Defendants. )

## MEMORANDUM AND ORDER

This matter comes before the court upon Nonparty Dr. Andrew Schauer and defendants' Motion to Quash Subpoena to Andrew Schauer, PH.D. (ECF No. 190). For the reasons stated below, the motion is denied. The court also denies plaintiffs' motion for leave to file a surreply (ECF No. 217).

**I.   BACKGROUND**

Plaintiffs and defendants assert various claims and counterclaims against each other, including those stemming from the termination of the 2002 Amended and Restated Service Agreement ("the service agreement") between Plaintiffs Radiologix, Inc. and Radiology and Nuclear Medicine Imaging Partners, Inc. and Defendant Radiology and Nuclear Medicine, LLC ("RNM"). On January 3, 2017, plaintiffs served a subpoena *duces tecum* on Dr. Schauer.[1] According the movants, Dr. Schauer is a psychologist licensed by the Kansas Behavioral Sciences Board who was hired by RNM "to provide professional services to its employed

---

[1] Subpoena at 5-7, ECF No. 190.

medical professionals."[2] The subpoena seeks Dr. Shauer's deposition testimony and requests that he bring with him to the deposition "[a]ny documents relating to . . . RNM, including but not limited to communications with any RNM employees or physicians, and documents relating to the consultation you provided to RNM."[3] Dr. Schauer and defendants have moved to quash the subpoena on the grounds that the information sought is protected by the psychologist-client privilege and is not relevant to this case.

## II. DISCUSSION

Generally, a motion to quash a subpoena must be made by the party to whom the subpoena is directed unless the party challenging the subpoena has a "personal right or privilege with respect to the subject matter of the documents requested in the subpoena."[4] Here, both Dr. Schauer (the person to whom the subpoena is directed) and defendants move to quash. Although defendants do not address the issue of standing, the court nevertheless finds that defendants have standing to move to quash. This district has previously held a movant has a personal right with respect to his personnel file and applications for employment.[5] The court finds the same would be true with respect to documents created by a psychologist based on communications the psychologist had with clients or employees of a corporate client.

In this case, the movants ask the court to quash the subpoena because they argue that the information the subpoena seeks is shielded from discovery by the psychologist-client privilege and is not relevant to the claims or defenses in this case. Fed. R. Civ. P. 45 governs subpoenas.

---

[2] Mem. in Supp. of Mot. to Quash at 1, ECF No. 190.

[3] Subpoena at 5, ECF No. 190.

[4] *Smith v. Midland Brake, Inc.*, 162 F.R.D. 683, 685 (D. Kan. 1995).

[5] *See Beach v. City of Olathe, Kan.*, No. 99-2210-GTV, 99-2217-GTV, 2001 WL 1098032, at *2 (D. Kan. Sept. 17, 2001).

The rule requires the court to quash a subpoena that seeks disclosure of privileged or other protected material, if no exception or waiver applies.[6] Although Rule 45 does not specifically provide for a relevancy objection, "the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and 34."[7] Therefore, "the court must examine whether a request contained in a subpoena is overly broad or seeks irrelevant information under the same standards" as the rules governing discovery requests served on parties.[8] The court addresses each of these objections.

### A. The Psychologist-Client Privilege

Because this case is before the court on diversity jurisdiction, Kansas state law governs the applicability and scope of privileges.[9] The movants argue that the psychologist-client privilege, codified in K.S.A. 74-5323, shields Dr. Schauer from being deposed and shields from discovery the documents sought by the subpoena. The statute provides in relevant part:

> The confidential relations and communications between a licensed psychologist and the psychologist's client are placed on the same basis as provided by law for those between an attorney and the attorney's client. Except as provided in subsection (b), nothing in this act shall be construed to require such privileged communications to be disclosed.[10]

Subsection (b) addresses testimony concerning matters of abuse, adoption, neglect, and the like and does not apply in this case.

---

[6] Fed. R. Civ. P. 45(d)(3)(A)(iii).

[7] *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (citing the advisory committee note to the 1970 Amendment of Rule 45(d)(1)).

[8] *Id.*

[9] Fed. R. Evid. 501; *ERA Franchise Syst. Inc. v. Northern Ins. Co. of New York*, 183 F.R.D. 276, 278 (D. Kan. 1998).

[10] K.S.A. 74-5323(a).

"The purpose of the privilege is to encourage people to seek and receive treatment for problems society endeavors to improve."[11] In other words, the privilege exists "to assure the patient that disclosure of all intimate details of his life to his psychotherapist will not be disclosed to the public at large, to the patient's embarrassment, and so encourage the patient to relay to his psychotherapist all details essential for the psychotherapist's effective diagnosis and treatment of the patient's mental and emotional problems."[12] Kansas state and federal courts have yet to evaluate the applicability of the psychologist-client privilege when a business entity retains a licensed psychologist. Nevertheless, Kansas courts have generally looked to the attorney-client privilege for guidance in interpreting the psychologist-client privilege.[13] However, the Kansas Supreme Court has also made clear that the psychologist-client privilege, which is a statutory creation, is not as broad as the attorney-client privilege, which existed at common law before being codified.[14] The Kansas Supreme Court has directed that the psychologist-client privilege must be strictly construed.[15]

The party asserting the psychologist-client privilege bears the burden of showing it applies and "establish[ing] the facts necessary to invoke it."[16] When ruling on a privilege

---

[11] *State v. Berberich*, 978 P.2d 902, 909 (Kan. 1999).

[12] *State v. Munyon*, 726 P.2d 1333, 1337 (Kan. 1986).

[13] *See, e.g., Berbeich*, 978 P.2d at 909-10; *Munyon*, 726 P.2d at 1336-37.

[14] *Berbeich*, 978 P.2d at 909.

[15] *Id.* at 908.

[16] *Id.* at 909.

objection, this district requires that the objecting party "provide sufficient information to enable the Court to determine whether *each element* of the asserted objection is satisfied."[17]

Here, the movants fail to meet their burden to demonstrate the psychologist-client privilege applies. Their opening memorandum makes conclusory assertions that merely restate the elements of the privilege—that Dr. Schauer is a licensed psychologist retained by RNM to provide professional services that he and the RNM employees reasonably believed were confidential and that nobody waives the privilege. The entire brief spans just two pages, not including signature blocks or the certificate of service.[18] The movants' reply brief devotes a paragraph of legal argument to the psychologist-client privilege and offers no new information from which the court could sustain their privilege objection.[19]

Typically, the burden to demonstrate privilege "can be met only by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory assertions or blanket claims of privilege."[20] With regard to the attorney-client privilege, this district has consistently required parties asserting the privilege to make a specific factual showing that it applies, and this district has consistently rejected blanket claims of privilege.[21] The court could not find that the attorney-client privilege attaches if a movant merely states that the confidential

---

[17] *Kannaday v. Ball*, 292 F.R.D. 640, 645 (D. Kan. 2013) (quoting *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000) (emphasis in original).

[18] *See* Mem. in Supp. of Mot. to Quash at 1-2, ECF No. 190.

[19] *See* Defs' Reply Mem. in Supp. of Mot. to Quash Subpoena to Andrew Schauer, PH.D. at 5, ECF No. 208.

[20] *Kannaday*, 292 F.R.D. at 645 (addressing the attorney-client privilege).

[21] *Perez v. Alegria*, No. 15-MC-401-SAC, 2015 WL 4744480, at *2 (D. Kan. Aug. 11, 2015) (blanket claims of privilege are inconsistent with Fed. R. Civ. P. 26(b)(5)); *Schmitz v. Davis*, No. 10-4011-RDR2015 WL 4744480, at *7 (D. Kan. Apr. 28, 2011) (stating that to support an attorney-client privilege or work-product objection to discovery "the objecting party must describe in detail the documents or information to be protected and must provide precise reasons for the objection to discovery"); *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at *4 (D. Kan. Feb. 1, 2006) (rejecting a blanket claim of attorney-client privilege after a failure to show documents were confidential substantive communications providing legal advice).

communications took place between a licensed lawyer and a client and are therefore privileged. The movants' conclusory assertions and lack of factually specific information or evidentiary support is similarly insufficient to establish the existence of the psychologist-client privilege.

The lack of factual or legal support for the movants' privilege objection is particularly concerning given the factual circumstances giving rise to the invocation of the privilege—namely, that an LLC has hired a licensed psychologist to provide "professional services." The movants have failed to come forward with any legal support for the notion that the privilege applies when an LLC is the client of the psychologist. And other jurisdictions addressing similar issues have failed to reach any uniform conclusions.[22] Although some courts have permitted business entities to claim the psychologist-client privilege, they have done so with a factually specific showing and contingent upon a party asserting privilege as to specific documents—circumstances not present in this instance.[23]

Defendants themselves note that they have provided plaintiffs with "multiple documents containing general business communications with Dr. Schauer . . . ."[24] Plaintiffs bring to the court's attention emails, minutes, drafts, and final summaries with information about Dr. Schauer's consultation work with RNM.[25] These discovery documents are indicative that Dr.

---

[22] *See e.g.*, *Berg v. Shapiro*, 948 P.2d 59, 62 (Colo. App. 1997) (holding the psychologist-client privilege did not apply when the psychologist was hired to "study, analyze, and make recommendations regarding the general relationship between the medical staff and administration"). The court in *Berg* noted the purpose of the statute was to protect confidential therapy sessions; the psychologist employed in this case was hired for consultative purposes, not to provide therapy. *Id.* More specifically, it held "a corporation cannot be a client of a psychologist as it may be with other professionals, such as attorneys and accountants," because a corporation does not have psychological needs. *Id.* *See also In re Aug., 1993 Regular Grand Jury (Med. Corp. Subpoena II)*, 854 F. Supp. 1392, 1398 (S.D. Ind. 1993) (holding under a strict construction of Proposed Rule of Evidence 504, a corporation could assert a psychotherapist-privilege).

[23] *See In re Aug.*, 854 F. Supp at 1398 (holding the corporation had to justify the privilege for each specific document it wanted protected; it could not make a blanket assertion of privilege).

[24] Defs.' Reply Mem. in Supp. of Mot. to Quash Subpoena at 5, ECF No. 208.

[25] Pls.' Resp. in Opp. of Mot. to Quash Subpoena at 14, ECF No. 201-1.

Schauer likely provided at least some communications that would not be shielded by the privilege. Comparing the psychologist-client privilege to the attorney-client privilege, it is well-established that "not every communication between an attorney and client is privileged, only confidential communications which involve the requesting or giving of legal advice [are covered]."[26] Similarly, not all communications between Dr. Schauer and RNM employees are automatically covered by the psychologist-client privilege because a psychologist and employees of the client were involved. But that is essentially the only showing the movants have made. Based on this record, the court finds that the movants have failed to demonstrate the psychologist-client privilege applies.

### B. Relevance

Fed. R. Civ. P. 26(b) defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[27]

The amendments took effect on December 1, 2015, and "shall govern in all proceedings in civil cases thereafter commenced and, insofar practicable, all proceedings then pending."[28] The court finds it appropriate to apply the amended rule in this proceeding because the amendment does

---

[26] *In re Grand Jury Subpoena to Kansas City Bd. of Pub. Utilities*, 246 F.R.D. 673, 678 (D. Kan. 2007) (quoting *Burton v. R.J. Reynolds Tobacco Co.*, 175 F.R.D. 321, 327 (D. Kan. 1997). An attorney's presence alone does not automatically grant privilege to meetings or information. *Id.* at 679.

[27] Fed. R. Civ. P. 26(a)(1).

[28] Supreme Court Order at 3 ¶2 (U.S. Apr. 29, 2015); *see also* 28 U.S.C. § 2074(a); Fed. R. Civ. P. 86(a)(2).

7

not significantly alter this rule or the court's application of the rule.[29] The party resisting discovery still bears the burden to support its objections.[30] The amendments do not "place on the party seeking discovery the burden of addressing all proportionality considerations."[31] After all, "[a] party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination."[32] If the requested discovery appears facially relevant or if the proponent of the discovery has demonstrated relevance, then the burden shifts to the objecting party to establish that the discovery does not come within the scope of relevance as defined by Rule 26(b).[33]

Here, plaintiffs explain that Dr. Schauer's records and testimony are relevant because RNM hired him during the period when defendants were discussing the termination of the service agreement. Plaintiffs contend that RNM hired Dr. Schauer, at least in part, because of the dissention within the physician group concerning the service agreement. They note that discovery documents already produced show that Dr. Schauer references the "RadNet relationship" as one of "three major issues" the radiologists were facing. "RadNet" refers to plaintiffs collectively. Responses to Dr. Schauer's questionnaire reference a lack of clarity among the radiologists about how they made decisions. Plaintiffs cite portions noting, "(e.g., call, RadNet, partnership, when does group need to vote on something vs. MT deciding) contributes to a sense of mistrust." Plaintiffs contend that Dr. Schauer has knowledge of the

---

[29] *N.U. v. Wal-Mart Stores, Inc.*, No. 15-4885-KHV, 2016 WL 3654759, at *6 (D. Kan. July 8, 2016).

[30] *Id.* (citing Fed. R. Civ. P. 26(b) advisory committee's note to the 2015 amendment).

[31] *Id.* at *7.

[32] *Id.*

[33] *Kannaday*, 292 F.R.D. at 650; *Allen v. Mill-Tel, Inc.*, 283 F.R.D. 631, 635 (D. Kan. 2012); *Goodyear*, 211 F.R.D. at 663; *Etienne v. Wolverine Tube, Inc.*, 185 F.R.D. 653, 656 (D. Kan. 1999).

viewpoints of the individual radiologist defendants about what led up to the alleged anticipatory breach of contract, making his testimony and the documents sought relevant to the claims in this case. Plaintiffs' explanation is sufficient to demonstrate facial relevance.

The movants then bear the burden to establish lack of relevance. The movants make a concise relevance argument in their opening brief. They state that the discovery is not relevant because "Dr. Schauer's professional services were wholly unrelated to the Service Agreement or the relationship between Plaintiffs and Defendants."[34] Their reply brief provides additional details regarding the timing of events. According to the movants, during meetings held in September 2014, RNM's shareholders passed a resolution authorizing legal counsel to deliver to plaintiffs a formal notice of termination of the service agreement, which counsel did in October 2014. In the May 2015 draft minutes, RNM's management committee approved the hiring of Dr. Schauer. The movants cite several summaries prepared by Dr. Schauer, which fail to mention the service agreement.

The timing of Dr. Schauer's hiring and the previously produced discovery documents do not demonstrate that the discovery sought is irrelevant. At most, this shows that Dr. Schauer likely possesses some information not bearing on the issues in this case. But this does not mean that Dr. Schauer possesses no relevant information. Notably absent from the briefs is any affidavit from Dr. Schauer or any representation by the movants that Dr. Schauer lacks knowledge of the various viewpoints of the defendant radiologists leading up to the contract termination or that Dr. Schauer did not discuss these matters with the defendant radiologists. To that end, the movants have failed to establish that the discovery sought is not relevant. For these reasons, the court overrules the movants' relevance objection.

---

[34] Mem. in Supp. of Mot. to Quash Subpoena to Andrew Schauer, Ph.D. at 2, ECF No. 191.

Within seven (7) calendar days from the date of this order, plaintiffs and the movants shall confer about a mutually agreeable time, date, and place for the deposition of Dr. Schauer. The deposition shall occur within thirty (30) calendar days from the date of this order.

### III. PLAINTIFFS' LEAVE TO FILE A SURREPLY

Surreplies are disfavored and typically not allowed.[35] However, "where a movant improperly raises new arguments in a reply," courts may allow a surreply.[36] Plaintiffs correctly assert that Dr. Schauer's employment timeline as it relates to relevance was not articulated until the reply brief.[37] Thus, plaintiffs are correct that the movants set forth a new argument in their reply brief. However, a surreply's purpose is to narrowly respond to new arguments, not continue to develop previous positions raised in the initial briefing. Plaintiffs' ten-page proposed surreply with sixteen pages of exhibits extends far beyond this purpose.[38] It again addresses defendants' burden of proving privilege existed and was not waived, with exhibits attached to support those arguments.[39] These issues should have been fully briefed in plaintiffs' response to the motion to quash. While the court may have been amenable to plaintiffs surreply had it narrowly addressed Dr. Schauer's employment timeline, it was not limited to this scope. Therefore, plaintiffs' motion is denied.

---

[35] *State of Kansas v. United States*, 192 F. Supp. 3d 1184, 1189 (D. Kan. 2016).

[36] *King v. Knoll*, 399 F. Supp. 2d 1169, 1174 (D. Kan. 2005) (internal citations omitted).

[37] Defs.' Reply Mem. at 2-3, ECF No. 208.

[38] *See generally* Pls.' Mot. for Leave to File a Surreply, ECF No. 217.

[39] *Id.* at 10–13, ECF No. 217.

**IV. FEES – OTHER CIRCUMSTANCES**

Plaintiffs seek an award of fees incurred as a result of responding to the motion pursuant to "Rule 25(g)."[40] Rule 25 governs substitution of parties, and Rule 25(g) does not exist. If plaintiffs seek fees under Rule 26(g)—which governs signatures on discovery disclosures, requests, responses, and objections—they have set forth no argument about why the movants' actions have violated the rule. Their request for fees is denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant and Nonparty Dr. Andrew Schauer's Motion to Quash Subpoena (ECF No. 191) is denied.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Leave to File a Surreply (ECF No. 217) is denied.

**IT IS SO ORDERED.**

Dated April 24, 2017, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge

---

[40] Pls.' Sealed Resp. in Opp'n to Mot. to Quash Subpoena to Andrew Schauer, Ph.D. at 15, ECF No. 203.