IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RADIOLOGIX, INC. and RADIOLOGY
AND NUCLEAR MEDICINE IMAGING
PARTNERS, INC.,

        **Plaintiffs,**

v.

RADIOLOGY AND NUCLEAR
MEDICINE, LLC,

        **Defendant.**

Case No. 15-4927-DDC-KGS

## MEMORANDUM AND ORDER

Defendant Radiology and Nuclear Medicine, LLC ("RNM")[1] has filed a Motion to Exclude the Damage Opinions of Plaintiffs' Designated Expert Marc Vianello. Doc. 284. Defendant asserts that the court should exclude Dr. Vianello's damage opinions under Fed. R. Evid. 702 because, defendant contends, his opinions "will not help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Plaintiffs have filed a Response opposing defendant's Motion to Exclude. Doc. 289. And, defendant has filed a Reply. Doc. 293. For reasons explained below, the court denies defendant's Motion to Exclude.

**I.    Factual Background**

This lawsuit arises from RNM's termination of a long-term management service agreement that it had entered with plaintiffs Radiologix, Inc. ("Radiologix") and Radiology and Nuclear Medicine Imaging Partners, Inc. ("RNMIP"). Plaintiff Radiologix is a national provider

---

[1] Plaintiffs' Second Amended Complaint asserts claims against defendant RNM and 20 individuals. *See generally* Doc. 61. All of the defendants named in the Second Amended Complaint filed the pending Motion to Exclude. But, the court since has dismissed the 20 individual defendants from the case after granting their summary judgment motions. Doc. 300. The only defendant remaining in the case is RNM. The court thus refers just to this remaining defendant—RNM—in this Memorandum and Order.

of imaging services based in California. Plaintiff RNMIP is a wholly owned subsidiary of plaintiff Radiologix. Radiologix is a wholly owned subsidiary of RadNet Management, Inc. ("RadNet Management").

Defendant RNM is a Kansas limited liability company whose shareholders are Kansas licensed physicians who provide radiology or radiation oncology services at hospitals and clinics in northeast Kansas, including Topeka.

In 2002, plaintiffs and defendant executed an Amended and Restated Service Agreement ("the Agreement"). Under the Agreement, plaintiffs agreed to provide certain management services to defendant in exchange for specified fees. The parties agreed to a 40-year term for the Agreement's duration. But, in 2014, defendant terminated the Agreement for cause because, defendant contends, plaintiffs had defaulted materially in performing their obligations under the Agreement.

In response, plaintiffs filed this lawsuit. They assert three claims: (1) breach of contract, (2) conversion, and (3) unjust enrichment. Defendant responded to plaintiffs' Complaint by asserting a Counterclaim for breach of contract.

To support plaintiffs' claims against defendant, plaintiffs have designated Marc Vianello as an expert witness to provide testimony about the damages plaintiffs allegedly sustained from defendant's termination of the Agreement. Defendant asks the court to exclude Mr. Vianello's opinions because, it contends, they are inadmissible under Fed. R. Evid. 702. The court considers defendant's request below.

## II.     Legal Standard

The court has a "gatekeeping obligation" to determine the admissibility of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell*

*Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)).  When performing this gatekeeping role, the court has broad discretion when deciding whether to admit expert testimony. *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (quoting *Orth v. Emerson Elec. Co.*, 980 F.2d 632, 637 (10th Cir. 1992)).  The admissibility of expert testimony is governed by Federal Rule of Evidence 702.  It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

This court must apply a two-part test to determine admissibility. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013).  First, the court must determine "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting Fed. R. Evid. 702).  Second, the court "'must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.'" *Id.* (quoting *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122 (10th Cir. 2006)) (further citations omitted).

To qualify as an expert witness, the witness must possess "such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial

3

foundation and would tend to aid the trier of fact in his search for truth." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (internal quotation omitted). To determine whether the expert's testimony is reliable, the court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93.

In *Daubert*, the Supreme Court established a non-exhaustive list of four factors that trial courts may consider when determining reliability of proffered expert testimony under Fed. R. Evid. 702: (1) whether the theory used can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community. *Id.* at 593–94. The Supreme Court has emphasized, however, that these four factors are not a "definitive checklist or test" and that a court's gatekeeping inquiry into reliability "must be tied to the facts of a particular case." *Kumho Tire*, 526 U.S. at 150.

But in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," rather than the *Daubert* factors and scientific foundation. *Id.* For such testimony to satisfy the reliability standard, it "must be 'based on actual knowledge, and not mere "subjective belief or unsupported speculation."'" *Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Trust v. Alerus Fin., N.A.*, 858 F.3d 1324, 1341–42 (10th Cir. 2017) (quoting *Mitchell v. Gencorp., Inc.*, 165 F.3d 778, 780 (10th Cir. 1999) (quoting *Daubert*, 509 U.S. at 590)). "When expert opinion 'is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it

cannot support a jury's verdict' and will be excluded." *Id.* at 1342 (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)).

"The proponent of expert testimony bears the burden of showing that the testimony is admissible." *Conroy*, 707 F.3d at 1168 (citing *Nacchio*, 555 F.3d at 1241). "[R]ejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee notes. While *Daubert* requires the court to serve as a gatekeeper for expert testimony, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

The court has discretion to determine how to perform its gatekeeping function under *Daubert*. *Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000). "The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated." *Id.* (citations omitted). In this case, the parties do not request a hearing. And the court has reviewed the exhibits filed with the motions carefully and believes that this review provides a sufficient record to render a decision without a hearing.

**III.    Analysis**

Defendant asserts that the court should exclude Mr. Vianello's damage opinions for two reasons. First, defendant argues that Mr. Vianello's damage opinions are not relevant to any material issue and are impermissibly confusing because Mr. Vianello has not calculated any damage amount allegedly sustained by either named plaintiff for any of the claims they assert in the case. Second, defendant contends that Mr. Vianello's calculation of "RadNet's Lost Profit Damages" is unreasonable and unreliable because he bases the calculation on unsubstantiated financial records of affiliated non-parties, ignores costs incurred for "corporate level" services,

and utilizes a non-party's "weighted average cost of capital" to formulate a present value reduction of alleged future lost profits. The court addresses each argument separately, below.[2]

### A. Are Mr. Vianello's damage opinions inadmissible because he has not calculated any damage amount alleged sustained by either named plaintiff?

Defendant first asserts that the court should exclude Mr. Vianello's damage opinions because, it contends, plaintiffs' expert has calculated a single damage amount allegedly sustained by a group of corporations, including non-parties, instead of calculating the damages allegedly sustained by each named plaintiff—Radiologix and RNMIP.

The parties have stipulated that Radiologix and RNMIP are separate corporations. Plaintiff Radiologix is a Delaware corporation with its principal place of business in California. Doc. 277 at 2 (Pretrial Order § 2.a.). Plaintiff RNMIP also is a Delaware corporation with its principal place of business in California. *Id.* RNMIP is a wholly owned subsidiary of Radiologix. *Id.* And, Radiologix is a wholly owned subsidiary of RadNet Management. *Id.* at 3.

Although not a stipulated fact, the parties separately assert that RadNet Management is a subsidiary of RadNet, Inc. *Id.* at 6 (Pretrial Order § 3.a. (plaintiffs' contentions)); *id.* at 23 (Pretrial Order § 3.b. (defendant's contentions)). Neither RadNet Management nor RadNet, Inc. is a party to this action.

---

[2] Defendant never challenges whether Mr. Vianello is qualified to provide expert testimony. Nevertheless, plaintiffs—as proponents of Mr. Vianello's expert testimony—assert that their expert is qualified to offer an expert opinion on damages. Plaintiffs recite that Mr. Vianello is the managing member of Vianello Forensic Consulting, L.L.C., has been a Certified Public Accountant since 1977, and has credentials in financial forensics and business valuation through the American Institute of Certified Public Accountants. Doc. 289 at 11. Plaintiffs also note that our court previously has found Mr. Vianello qualified to render an expert opinion on a plaintiff's diminished historical and future sales. *RMD, LLC v. Nitto Ams., Inc.*, No. 09-2056-JAR-DJW, 2012 WL 5398345, at *8 (D. Kan. Nov. 5, 2012); *see also id.* at *3 (noting that Mr. Vianello "has testified as an expert witness with regard to business valuation and damages in other federal and state court matters"). On this record, and given the absence of a challenge of this kind, the court preliminarily finds that Mr. Vianello is qualified to provide expert testimony.

Mr. Vianello's expert report has calculated a single damage amount that he has labeled "RadNet's Lost Profits Damages." Doc. 286-1 at 9. Mr. Vianello's report explains, however, that he understands the separate corporate structure of each plaintiff. *Id.* at 2. And Mr. Vianello states that he understands that RadNet, Inc. is not a party to this lawsuit. *Id.* But Mr. Vianello noted that the Second Amended Complaint established the convention of referring to Radiologix and RNMIP collectively as "RadNet." *Id.* So, Mr. Vianello adopted that same convention in his expert report. *Id.*

Mr. Vianello explains that his damage calculation is "the present value of the profits that RadNet would have earned under the Amended and Restated Service Agreement through the un-extended termination date of November 26, 2037 ("RadNet's Lost Profits Damages")." *Id.* Defendant asserts that Mr. Vianello's calculation of a single damage amount is inadmissible because it includes financial losses that a non-party—RadNet, Inc.—believes it will sustain from defendant's termination of the Agreement it entered with plaintiffs Radiologix and RNMIP. Defendant accuses Mr. Vianello of ignoring the corporate veil separating the various "RadNet" entities. And thus, defendant argues, Mr. Vianello's damage opinions are not relevant to any material issue in this case because neither RadNet Management nor RadNet, Inc. is a party.

The court disagrees with defendant's characterization of Mr. Vianello's damage opinions. As plaintiffs explain, Mr. Vianello considered two things when calculating plaintiffs' purported lost profits damages: (1) the revenues plaintiffs would have generated but for defendant's alleged breach of contract; and (2) the expenses plaintiffs would have incurred from performing under the contract but for defendant's alleged breach. Mr. Vianello then subtracted his calculated expenses from his calculated revenues to determine the value of plaintiffs' purported lost profits.

7

Defendant criticizes the manner in which Mr. Vianello calculated plaintiffs' purported cost savings. Mr. Vianello's report states that his calculation of plaintiffs' operating expenses "include[s] a mix of direct expenses at the RNM level and RadNet corporate-level expenses allocated to the billing services performed for [defendant]." Doc. 286-1 at 10. But the parties' Agreement required the "Administrator" (RNMIP) to "provide or arrange for the [management] services" for defendant. Doc. 1-1 at 12 (Agreement § 3.1(a)). Plaintiffs assert that RNMIP did both. It provided some services itself, and also it arranged for others (such as Radiologix, or RadNet Management, or others) to provide services to defendant. Plaintiffs contend that Mr. Vianello's calculation properly accounts for all of the expenses RNMIP would have incurred either to provide or arrange for services for defendant. Plaintiffs assert that it does not matter who incurred the expense. Instead, all that matters, plaintiffs say, is whether Mr. Vianello properly has accounted for that expense in his damage calculation.

Defendant responds that this calculation ignores the significant management fees that RNMIP paid to Radiologix under a separate agreement to compensate Radiologix for the services it provided to defendant under the parties' Agreement. Defendant also argues that the calculation fails to consider a similar arrangement that Radiologix entered with RadNet Management. The court addresses these arguments more extensively in the next section. And it concludes that these types of arguments go to the weight of Mr. Vianello's damage opinions, not their admissibility. As our court has explained before, an expert's decision not to consider certain facts in formulating his opinions is a matter for cross-examination, and not exclusion, because that decision goes to the weight of the testimony, not its admissibility. *See*, *e.g.*, *In re Urethane Antitrust Litig.*, MDL No. 1616, No. 04-1616-JWL, 2012 WL 6681783, at *3 (D. Kan. Dec. 21, 2012), *aff'd* 768 F.3d 1245 (10th Cir. 2014) (refusing to exclude expert testimony at

trial and, instead, holding that the expert's decision to refrain from considering certain facts when formulating his opinions is a "is a matter for cross-examination").

The court also rejects defendant's argument that Mr. Vianello's calculation of one set of damages attributable to both plaintiffs is improper. Both plaintiffs were parties to the Agreement that, they contend, defendant unlawfully breached. Both plaintiffs are entitled to recover the damages that allegedly flow from that breach. Plaintiffs need not itemize their damages separately between the two corporate entities. *See Standard Machinery Co. v. Duncan Shaw Corp.*, 208 F.2d 61, 65 (1st Cir. 1953) (applying Rhode Island law, holding that each plaintiff was entitled to recover lost profit damages from defendant's breach of contract, and explaining that "proof of the actual amount of the profits lost by each plaintiff is not essential" because "actual damages sustained by an injured party in this type of case[ ] may, and often do, rest upon reasonable inferences to be drawn from the facts, circumstances and data furnished by the evidence." (citation and internal quotation marks omitted)).

In its Reply, defendant cites an unpublished Tenth Circuit case that differs significantly from the facts here. Doc. 293 at 4 (citing *Centra, Inc. v. Chandler Ins. Co., Ltd.*, 229 F.3d 1162, 2000 WL 1277672, at *9 (10th Cir. Sept. 7, 2000)). In *Centra*, the plaintiff corporation sought to recover damages allegedly incurred by its subsidiaries. *Id.* at *9. The Tenth Circuit explained that because the subsidiaries were not parties to the litigation, they "did not qualify as real parties in interest." *Id.* (citing Fed. R. Civ. P. 17(a)). The Circuit held that the plaintiff could not pierce its own corporate veil to render it the real party in interest. *Id.* (citations omitted). Instead, the Tenth Circuit explained: "It is well established that, 'where the business or property allegedly interfered with by forbidden practices is that being done and carried on by a corporation, it is that corporation alone . . . who has a right of recovery, even though in an economic sense real harm

9

may well be sustained [by other entities as a result] . . . of such wrongful acts.'" *Id.* (quoting *Martens v. Barrett*, 245 F.2d 844, 846 (5th Cir. 1957)).

Here, plaintiffs Radiologix and RNMIP are the real parties in interest. They are the parties who entered the Agreement with defendant. And they allege that they sustained damages from defendant's alleged breach of the Agreement. If these plaintiffs successively prove at trial that defendant breached the Agreement, they are entitled to recover their collective damages—the profits lost from defendant's termination of the Agreement. And they are entitled to those damages allegedly sustained "even though in an economic sense real harm may well be sustained" by the other RadNet entities resulting from defendant's alleged breach. *Id.*

Defendant also contends that Mr. Vianello's damage opinions are inadmissible because he never calculated separate damage amounts attributable to conduct of other defendants—the individuals that the court since has dismissed from the case. But, as plaintiffs explain, they seek just one type of damages—damages that plaintiffs allegedly sustained from defendant's termination of the Agreement. These damages are the same no matter what legal theory plaintiffs rely on to pursue them. Mr. Vianello's calculation of one damage amount—not attributable to separate conduct of each named defendant—does not render his damage opinions inadmissible. Such attacks go to the weight of the evidence, and defendant may cross-examine Mr. Vianello vigorously on these points at trial. But the court refuses to exclude his damage opinions for this reason. Instead, the court concludes that Mr. Vianello's testimony will help the trier of fact understand plaintiffs' claim for damages based on lost profits.

### B. Are Mr. Vianello's damage opinions inadmissible because he has used flawed data to calculate alleged lost profit damages?

Defendant next asserts that Mr. Vianello's damage opinions are unreliable because he bases the calculation on unsubstantiated financial records of affiliated non-parties, ignores costs

10

incurred for "corporate level" services, and utilizes a non-party's "weighted average cost of capital" to formulate a present value reduction of alleged future lost profits. Each of these three arguments goes to the weight of Mr. Vianello's opinions, not their admissibility. The court thus declines to exclude Mr. Vianello's damage opinions for these reasons.

*First*, defendant contends that the court should exclude Mr. Vianello's damage opinions because he calculated them using financial information that did not come from either plaintiff's financial records. Defendant asserts that Mr. Vianello used an income statement that was prepared using an accounting system maintained by RadNet Management—and not a system maintained by either plaintiff Radiologix or RNMIP. Plaintiffs respond that it is reasonable for a parent company—here, RadNet Management—to maintain financial information for its subsidiaries. And, plaintiffs assert, witnesses have testified that the data in the income statement belongs to RNMIP. *See* Docs. 289-5 (Ching Man Dep.), 289-6 (Jayne Rarrick Dep.). On this record, Mr. Vianello's use of this financial information does not render his damage opinions unreliable. Instead, defendant's arguments about the origins of the financial information used to form the expert's opinions go to the weight of the evidence. Defendant is free to cross-examine Mr. Vianello on this topic when it tries to poke holes in his damage calculation. But the court finds no basis to exclude his opinions for this reason, and so it declines defendant's request to exclude them.

*Second*, defendant argues that Mr. Vianello's calculation is inadmissible because it ignores costs incurred for "corporate level" services. As discussed above, defendant criticizes Mr. Vianello's calculation for failing to consider the management fees that RNMIP paid to Radiologix under a separate agreement to compensate Radiologix for the services it provided to

11

defendant.  Defendant also contends that Mr. Vianello did not consider a similar arrangement that Radiologix entered with RadNet Management.

Plaintiffs respond with two arguments.  First, plaintiffs contend that the issue is moot because Radiologix and RNMIP amended their intercompany management fee agreement effective January 1, 2016.  As of then, RNMIP no longer pays a management fee to Radiologix.  So, plaintiffs assert, Mr. Vianello need not consider a management fee that no longer exists when calculating plaintiffs' future lost profits.  Second, even if it were proper to consider the non-existent management fee, plaintiffs contend that it is improper to deduct it from the lost profits calculation.  Plaintiffs explain that any management fee expense allocated to RNMIP corresponds as income to Radiologix.  So, as Mr. Vianello's Surrebuttal Expert Report explains, the net result in a damage calculation for both plaintiffs is a "zero effect."  Doc. 286-3 at 17.  Mr. Vianello's Surrebuttal Expert Report also asserts 12 additional reasons why, Mr. Vianello believes, it is improper to deduct the management fees from the lost profits damage calculation.  *Id.* at 19–21.

Defendant disagrees with the way Mr. Vianello calculated his damage opinions.  And, defendant asserts, Mr. Vianello's methodology produces a flawed damages calculation.  These arguments question the weight of Mr. Vianello's expert testimony.  But, defendant's disagreements with Mr. Vianello's calculation provide no reason to find them unreliable.  The court refuses to exclude Mr. Vianello's damage opinions for this reason.

*Finally*, defendant asserts that Mr. Vianello erred in the way that he calculated the present value of plaintiffs' lost profits damages.  Mr. Vianello's expert report explains:  "It is [his] opinion that the appropriate discount rate to reduce future commercial damages to present value is the plaintiff's weighted average cost of capital ("WACC")."  Doc. 286-1 at 17.  He defines a

WACC as representing "the mix of the plaintiff's cost of debt and cost of equity." *Id.* To determine this figure, Mr. Vianello asked "RadNet" to provide him with an analysis of its costs of debt. *Id.* And RadNet, Inc.'s Executive Vice President & Chief Financial Officer Mark Stolpher provided him with certain information. *Id.* at 17–20. Mr. Vianello then calculated RadNet's WACC as 6.944%. *Id.* at 19. And he used that figure to calculate "RadNet's Lost Profits Damages." *Id.* at 19–20.

Defendant argues that Mr. Vianello improperly has used the WACC for RadNet, Inc.—not the WACC for either of the named plaintiffs—thus producing an inflated and misleading lost profit damage calculation. Defendant also contends that Mr. Vianello's use of RadNet, Inc.'s WACC improperly disregards the separate corporate status of these various entities. Plaintiffs respond to this argument with a Declaration executed by Mark Stolpher (RadNet, Inc.'s Executive Vice President & Chief Financial Officer). Doc. 289-4. Mr. Stolpher explains that Radiologix and RNMIP do not borrow money from lending institutions. *Id.* ¶ 4. Instead, when Radiologix or RNMIP require borrowed funds to finance their operations, they secure that funding from the corporate level, *i.e.* from RadNet, Inc. *Id.* ¶ 5. So, Mr. Stolpher explains, "'RadNet's' borrowing costs are RNMIP's and Radiologix's borrowing costs." *Id.* And this is why Mr. Vianello used RadNet, Inc.'s borrowing costs to calculate the WACC. Defendant's arguments that Mr. Vianello improperly used this figure to calculate his damage opinions go to the weight and not the admissibility of the evidence. *See*, *e.g.*, *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1260–63 (10th Cir. 2014) (affirming trial court's admission of expert testimony and holding that an argument attacking the experts' decision to use certain variables in his analysis "bore on the weight of [the expert's] opinions, not their admissibility").

At trial, defendant can use "[v]igorous cross-examination" or the "presentation of contrary evidence" to argue its points about how Mr. Vianello calculated his damage opinions and why, defendant contends, his methodology is improper. *Daubert*, 509 U.S. at 596 (citation omitted). But these arguments do not render Mr. Vianello's damage opinions inadmissible under Fed. R. Evid. 702. The court thus declines to exclude Mr. Vianello's opinions at trial.

### IV. Conclusion

For the reasons explained above, the court denies defendant's Motion to Exclude.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Exclude the Damage Opinions of Plaintiffs' Designated Expert Marc Vianello (Doc. 284) is denied.

**IT IS SO ORDERED.**

**Dated this 4th day of January, 2018, at Topeka, Kansas.**

                                                     **s/ Daniel D. Crabtree**
                                                   **Daniel D. Crabtree**
                                                   **United States District Judge**