# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RADIOLOGIX, INC. and RADIOLOGY
AND NUCLEAR MEDICINE IMAGING
PARTNERS, INC.,

       **Plaintiffs,**

v.

                                        **Case No. 15-4927-DDC-KGS**

RADIOLOGY AND NUCLEAR
MEDICINE, LLC,

       **Defendant.**

_____

## MEMORANDUM AND ORDER

      For more than 16 years, plaintiff Radiologix, Inc. (or one of its predecessors-in-interest) provided management services to defendant RNM (a physician-owned radiology practice) under a long-term management service agreement. In 2014, defendant terminated the parties' agreement. In response, plaintiffs filed this lawsuit alleging, among other things, that defendant had breached the parties' agreement by unlawfully terminating the contract and transferring defendant's billing and coding operations to another company. Defendant filed a Counterclaim against plaintiffs asserting that it was plaintiffs—not defendant—who had breached the parties' contract by materially defaulting on duties imposed by the parties' agreement.

      The parties moved for summary judgment against the competing breach of contract claims. The court denied both motions, finding that material issues of fact exist and so, a jury must decide both parties' breach of contract claims. *See generally* Doc. 300. And the court set the matter for trial on March 6, 2018.

      Consistent with the court's Trial Order, the parties exchanged their trial exhibits shortly before the scheduled trial date. During that process, defendant discovered that plaintiffs'

proposed trial exhibits included documents that plaintiffs never had produced during discovery. In light of that discovery, the court vacated the March 6, 2018, trial date, to allow the parties to engage in additional discovery. The court referred the matter to Magistrate Judge K. Gary Sebelius for management of that additional discovery. During the additional discovery period, plaintiffs produced more documents, answered interrogatories posed by defendant, and produced certain witnesses for deposition. Also—for the first time in the lawsuit—the parties exchanged privilege logs. After plaintiffs questioned some of defendant's privileged designations, defendant de-designated some documents, thus withdrawing its privilege claim. It produced these documents to plaintiffs. Also, plaintiffs deposed one of defendant's physicians about the de-designated documents.

The parties presented several discovery disputes to Judge Sebelius during the additional discovery period. After Judge Sebelius had resolved the issues, he referred the matter back to the district judge assigned for trial. The court then reset the case for trial beginning on February 5, 2019.

This matter comes before the court now on the parties' cross-motions for sanctions. Each motion asks the court to impose sanctions on the other side for its alleged discovery failures, as revealed during the additional discovery period.

Defendant's Motion for Sanctions (Doc. 400) asserts that plaintiffs have violated the Federal Rules of Civil Procedure—specifically invoking Rules 16(f), 26(g), 37(b), 37(c), and 37(d)—by intentionally withholding relevant and discoverable documents and failing to implement reasonable and defensible discovery protocols. Defendant asks the court to impose sanctions on plaintiffs for these violations by: (1) ordering plaintiffs to pay defendant's reasonable expenses, including attorneys' fees, incurred since February 20, 2018; and

(2) instructing the jury at the upcoming trial that plaintiffs failed to produce certain documents during discovery; and (3) instructing the jury that other relevant documents likely exist but they are not available in the case because plaintiffs failed to collect and produce them.

Plaintiffs' Motion for Sanctions (Doc. 406) asserts that defendant violated Federal Rules of Civil Procedure 30(d)(2), 37(a)(5), 37(c), and 37(e) in two distinct fashions. First, plaintiffs contend, defendant deliberately withheld highly relevant emails by claiming improperly that a privilege shielded them from production. Second, plaintiffs assert, defendant failed to preserve emails and documents from Dr. Tim Allen—one of defendant's radiologists and Chairperson of RNM's management committee. Plaintiffs allege that they never learned about defendant's discovery failures until after the trial delay. So now, plaintiffs ask the court to impose sanctions on defendant for its alleged discovery failures by: (1) instructing the jury about Dr. Allen's failure to preserve his emails and instructing the jury that they may infer that Dr. Allen's emails were adverse to his interests and those of RNM; and (2) awarding plaintiffs reasonable expenses, including attorneys' fees, incurred in connection with defendant's discovery failings.

The court addresses each Motion for Sanctions, separately, below. After considering the parties' arguments, the court denies both motions.

## I.  Defendant's Motion for Sanctions

Defendant asserts four arguments supporting its sanctions motion. First, defendant contends, plaintiffs intentionally withheld and failed to produce relevant documents. Second, defendant argues, plaintiffs failed to comply with court orders governing the additional discovery period. Third, defendant argues, plaintiffs implemented unreasonable and indefensible document identification and collection processes. Finally, defendant asserts that plaintiffs' document review process was flawed. Defendant argues that each one of these failures warrants sanctions.

Defendant thus asks the court to order plaintiffs to pay defendant's attorneys' fees and expenses incurred since February 20, 2018. Also, defendant asks the court to give an adverse inference instruction to the jury as a sanction for plaintiffs' unreasonable discovery efforts. The following sections address each of defendant's four arguments.[1]

### A. Plaintiffs' Failure to Produce Relevant Documents

With this argument, defendant asserts that plaintiffs' document production warrants sanctions for two different reasons. First, defendant contends, plaintiffs wrongfully and intentionally withheld relevant documents from their supplemental production on the eve of trial. Second, defendant argues, plaintiffs failed to produce relevant documents during the case's original discovery period because plaintiffs' collection and search efforts were deficient.

### 1. Withholding of Documents

Defendant argues that plaintiffs intentionally withheld relevant, responsive, and non-privileged documents when they produced additional documents on the eve of trial. When plaintiffs served their trial exhibits on February 20, 2018—shortly before the March 6 trial date—the production included five "placeholder" pages with the text "Intentionally Left Blank" and Bates numbers in the lower left-hand corner. Later, plaintiffs produced the documents that

---

[1]     Below, in each discrete section, the court provides relevant background information as necessary. The court recognizes that this case has a long history. Indeed, plaintiffs submitted a 114-page response to defendant's Motion for Sanctions that includes a 73-page "Detailed Statement of Facts." Doc. 408. Plaintiffs even call that section a "painstakingly long and detailed description of the background facts," but, they contend, it is not meant to include argument. Doc. 408 at 8 n.8. Defendant accuses plaintiffs of flouting the court's local rules governing the page limits for the argument portion of a brief. Doc. 419 at 1 n.1. The court doesn't endorse plaintiffs' excessive filing here, and hopes other litigants won't immolate it. They shouldn't. But the court declines defendant's invitation to strike plaintiffs' Response beyond the local rule's 30-page limit. *Id.* Also, the court doesn't find it necessary to recite a detailed factual background—comparable to the one plaintiffs have provided—to decide the pending motions. Indeed, in some ways, the court found it difficult to understand the crux of the dispute here—*i.e.*, the reason why plaintiffs didn't realize until the eve of trial that they hadn't produced relevant documents— because plaintiffs never explain the error's cause until page 55 of their Response. This Order uses a different convention: It just provides relevant background information as needed.

they initially had marked "Intentionally Left Blank." Defendant asserts that these documents are

relevant and contain agreed-upon search terms, yet plaintiffs hadn't produced them earlier in the

litigation. Thus, defendant argues, plaintiffs violated their duty to produce relevant documents

they actually had located by electronic searching. And, defendant contends, this conduct

warrants sanctions under Rule 37(c).

Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless*. In addition to or instead of this sanction, the court on motion and after giving opportunity to be heard:
>
>> (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>>
>> (B) may inform the jury of the party's failure; and
>>
>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi).

Fed. R. Civ. P. 37(c)(1) (emphasis added).[2]

A district court enjoys "broad discretion" to decide whether a violation is justified or

harmless. *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th

Cir. 2017) (citation and internal quotation marks omitted). Nevertheless, the Tenth Circuit

instructs that "the Rule 37(c)(1) inquiry 'depends upon several factors that a district court *should*

consider in exercising its discretion.'" *Id.* (quoting *Eugene S. v. Horizon Blue Cross Blue Shield

of N.J.*, 663 F.3d 1124, 1129 (10th Cir. 2011)). These factors are: "'(1) the prejudice or surprise

---

[2]    The court need not hold a hearing to decide whether to impose sanctions under Rule 37(c)(1). Our Circuit has explained that "[a]n opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1230 (10th Cir. 2015) (discussing the requirements of Rule 37(c)(1)). Here, plaintiffs' 114-page response has afforded plaintiffs ample "opportunity to be heard."

to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.'" *Id.* (quoting *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999)).

Here, plaintiffs explain, the "intentionally left blank pages" were emails that they discovered in the days leading up to the 2018 trial. Plaintiffs anticipated that one of the issues at trial would involve plaintiffs' efforts to address defendant's concerns about plaintiffs' performance under the parties' agreement. And one of defendant's concerns involved plaintiffs' efforts to update defendant's website. So, to prepare for trial on this issue, plaintiffs searched Relativity (an online document management database containing the documents plaintiffs had collected in the case) for emails discussing any updates of defendant's website. That search revealed a group of emails about defendant's website, and plaintiffs included those emails with their trial exhibits. But, instead of producing all the emails as trial exhibits, plaintiffs produced just some of them, and replaced the others with the pages marked "intentionally left blank." Plaintiffs' counsel explains the reason for doing so: The Rule governing pretrial disclosures— Rule 26(a)(3)(A)(iii)—requires a party to "provide to the other parties and promptly file the following information about the evidence that it *may present* at trial other than solely for impeachment . . . an identification of each document or other exhibit, including summaries of other evidence—separately identifying those items the party *expects to offer* and those it *may offer if the need arises*." Fed. R. Civ. P. 26(a)(3)(A)(iii) (emphasis added). Because plaintiffs neither "expect[ed] to offer" nor thought they "may offer" *all* emails about the website, they didn't include all of them in the trial exhibits that they produced on February 20, 2018. But

plaintiffs did produce the emails in a later, supplemental production provided to defendant one day later, on February 21, 2018.

Defendant contends that this argument "mistakenly impl[ies] that [plaintiffs] intended to produce those documents all along." Doc. 419 at 3. Instead, defendant alleges, plaintiffs' supplemental production of the documents was "completely accidental" after plaintiffs' paralegal mistakenly and inadvertently produced them. *Id.*; *see also* Doc. 401 at 17. The court finds no factual support in the record for defendant's assertions. Plaintiffs represent that they did not withhold the documents deliberately, but instead produced the documents to defendant when they made a supplemental production.[3] And, plaintiffs assert, the withholding pages merely reflected plaintiffs' attempt to cull the website-related emails down to the ones that they expected to offer (or may offer) as exhibits at trial. Also, plaintiffs explain, they performed this culling "during the fast and furious pace" of preparing for trial and trying to meet various pretrial deadlines. Doc. 401-6 at 3 (March 6, 2018, letter from plaintiffs' counsel to defendant's counsel explaining the "intentionally left blank" issue). The court finds this explanation plausible, and the record certainly doesn't contradict it.

Also, on the current record, the court concludes that plaintiffs' actions don't warrant sanctions because the withholding was harmless. The Rule 37(c) factors support this conclusion. Plaintiffs cured any prejudice or surprise by producing the emails in the supplemental production. And, during the supplemental discovery period, defendant has had ample time to review the emails and seek additional discovery about them. Also, the court finds no evidence of bad faith or willfulness by plaintiffs.

---

[3]     In a March 6, 2018, letter, plaintiffs acknowledged that they had produced the "intentionally left blank" documents in the February 21, 2018, supplemental production. Doc. 401-6 at 3. Also, plaintiffs offered to reproduce the documents to defendant to load into a document management database. *Id.*

Defendant contends that it nonetheless has sustained prejudice from the months-long trial delay caused by plaintiffs' tardy document disclosures on the eve of trial. The problem with this theory is that plaintiffs' removal and marking of these emails as "intentionally left blank" was not the reason for the trial delay. Instead, the delay resulted from plaintiffs' discovery—just days before trial—that it never had produced certain relevant documents because inadvertent "gaps" existed in its document production. The court discusses this problem in the next subsection.

## 2. Plaintiffs' Failure to Produce Documents Earlier

On the eve of the March 6, 2018, trial, plaintiffs located relevant documents that they had not produced in the litigation. Upon further investigation, plaintiffs realized that "gaps" existed in their document production. Specifically, plaintiffs discovered that they incorrectly had set the production parameters in their document management database when they produced responsive documents to defendant.

Plaintiffs explain. After plaintiffs collected electronic documents and loaded them into the database, they ran the agreed-upon search terms against those documents in their database. Then, plaintiffs' counsel "took the documents that hit on a search term, used specific in-house and outside lawyer email addresses to identify and cull privileged items, and then conducted a limited, targeted review or 'sample' of the remaining documents." Doc. 408 at 7. Plaintiffs then produced what they believed was every document that had hit on a search term but was not privileged. *Id.*; *see also id.* at 39 ("[I]t had been Plaintiffs' intention from the outset to simply produce all of the Topeka server documents that hit on [defendant's] search terms, after any privileged documents had been removed."). But instead, the production parameters on the database mistakenly were set to produce just the specific, non-privileged documents that

plaintiffs had tagged in the database as "responsive" during the limited, targeted review. *Id.* at 55. And so, the parameters did not produce all non-privileged documents that had hit on one of the parties' agreed-upon search terms. *Id.*

Plaintiffs call the parameter-setting a "mistake" because, as plaintiffs' briefing stresses many times, they "wanted to produce all those documents." *Id.* Also, plaintiffs contend, the documents withheld are helpful to plaintiffs' case because they show the "substantial and hard work that Plaintiffs did for [defendant]." *Id.* Plaintiffs contend that they didn't realize the mistake until the eve of trial when they discovered the unproduced documents during their trial preparation. Plaintiffs deny that they willfully or intentionally withheld these documents. To the contrary, they "believed these and other documents like them were already included in the document production." *Id.* at 65.

After the court vacated the March 6, 2018, trial, plaintiffs used the additional discovery period to review their document collection and production efforts. And they supplemented the production gaps caused by having used the wrong parameters to produce documents. These efforts led to a supplemental production where plaintiffs produced more than 30,000 additional documents to defendant. But, defendant argues that plaintiffs should have produced those documents a year earlier during the case's original discovery period. Specifically, defendant contends that Judge Sebelius's Agreed Order Establishing Protocol for Discovery of Electronic Data ("ESI Protocol") (Doc. 103) required plaintiffs to review every document that hit on one of the search terms. And, defendant argues, plaintiffs' limited, targeted review violated the ESI Protocol. The court doesn't read the ESI Protocol the same as defendant.

The ESI Protocol required the parties to run certain search terms against "ESI gathered and secured." Doc. 103 at 5. And then, the ESI Protocol required the parties to "produce[ ] or

place[ ] on a privilege log" the "[r]elevant and responsive documents and information that results from [the] searches." *Id.* Defendant contends that plaintiffs violated the ESI Protocol "by either not running search terms against the 'ESI gathered and secured,' or not reviewing all the documents that hit on those search terms." Doc. 401 at 19–20. The court disagrees.

Here, plaintiffs ran the search terms against the collected ESI, removed privileged material, and then conducted limited, targeted searches of the non-privileged documents that had hit on the search terms. Nothing in the ESI Order required plaintiffs to review every one of those documents individually. Instead, plaintiffs chose to review a limited number of the documents to determine if the search terms had returned responsive documents. Then—as plaintiffs represent—they intended to produce *all* the non-privileged documents that hit on the search terms as the responsive documents. But they didn't achieve that aim because they had made a mistake when they set the production parameters in the document management database. In short, plaintiffs erred as human beings are wont to do. The court finds nothing about plaintiffs' review that violated the ESI Protocol.

Plaintiffs, admittedly, did not produce all the "[r]elevant and responsive documents and information that results from [the] searches." Doc. 103 at 5. So, defendant contends, plaintiffs violated the ESI Protocol. Also, defendant argues, plaintiffs' failure to produce all relevant documents during the original discovery period violated the court's Scheduling Order that required the parties to serve supplemental disclosures by January 6, 2017, and complete discovery by February 17, 2017. Doc. 123 at 1. But plaintiffs adequately have explained the cause of their failure—an unintentional human error. Nevertheless, defendant argues that plaintiffs' conduct is sanctionable under Federal Rules of Civil Procedure 16(f) and 37(b).[4]

---

[4]      Defendant asserts that plaintiffs' failure to produce the relevant documents earlier in the litigation violated another Federal Rule of Civil Procedure—Rule 26(g). This Rule requires an attorney to sign

Rule 16(f)(1)(C) authorizes a court to impose sanctions on a party or attorney who "fails to obey a scheduling or other pretrial order."  Also, Rule 16(f)(2) provides:

> Instead of or in addition to any other sanction, the court *must* order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, *unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.*

*Id.* (emphasis added).  Rule 37(b)(2)(A) provides that a court "*may* issue" certain sanctions when "a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery . . . ."  *Id.* (emphasis added).  And, similar to Rule 16(f)(2), Rule 37(b)(2)(C) provides:

> Instead of or in addition to the [sanctions] orders [listed in Rule 37(b)(2)(A)], the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, *unless the failure was substantially justified or other circumstances make an award of expenses unjust.*

*Id.* (emphasis added).

Here, the court declines to sanction plaintiffs under either Rule.  Even if plaintiffs' inadvertent failure violated the ESI Order, the court has discretion to award sanctions under Rule 16(f)(1) and 37(b)(2)(A).  And the court is not required to award fees and expenses under Rule 16(f)(2) or Rule 37(b)(2)(C) if certain circumstances make such an award unjust.

---

disclosures and discovery responses, and, by signing, the attorney certifies that the disclosure or discovery response is complete and correct "to the best of the person's knowledge, information, and belief formed after reasonable inquiry."  Fed. R. Civ. P. 26(g)(1).  A court may impose sanctions under Rule 26(g)(3) for violating the Rule's signing and certification requirement.  Fed. R. Civ. P. 26(g)(3).  Here, the court declines to find plaintiffs' counsel's certification of disclosures and discovery responses violated Rule 26(g).  Plaintiffs have explained that the failure to produce those documents during the original discovery period was an inadvertent and unintentional error.  And the court has found that plaintiffs' explanation for the oversight is plausible and reasonable.  Thus, the court concludes that plaintiffs' counsel's signature complied with Rule 26(g) because, when counsel signed the disclosures and discovery responses, counsel certified that they were complete and correct "to the best of the person's knowledge, information, and belief formed after reasonable inquiry."  Fed. R. Civ. P. 26(g)(1).  Nothing in the record suggests that plaintiffs' counsel violated this rule.

Defendant argues that plaintiffs' actions here resemble conduct that our court sanctioned in *Resolution Trust Corp. v. Williams*, 165 F.R.D. 639 (D. Kan. 1996). In *Williams*, Judge Newman sanctioned the plaintiff and its attorneys for failing to produce documents that the Scheduling Order required the plaintiff to produce. *Id.* at 641. Like plaintiffs here, the *Williams* plaintiff asserted that it hadn't withheld the documents intentionally. *Id.* at 642. But, the plaintiff conceded, it had failed to produce the documents as mandated by the Scheduling Order's timeline. *Id.* The court recognized that "negligence in the handling of the case which causes unreasonable delays and interferes with the expeditious management of trial preparation *may be* a basis for sanctions." *Id.* at 643 (emphasis added). But, when imposing sanctions, *Williams* relied on facts that differ significantly from the ones here. For example, the court found that the plaintiff's attorneys neither had communicated with their client nor made an appropriate investigation to learn whether the relevant documents existed. *Id.* at 647. Also, the court rejected the attorneys' contention that they had produced the documents as soon as they learned they existed. *Id.* at 648. Instead, the court found that the attorneys didn't even review the documents when they learned about them. *Id.* Also, the attorneys didn't inform the defendants about the documents' existence until months later. *Id.* Under those circumstances, Judge Newman found that plaintiff hadn't explained its failure to produce adequately, and so, imposing sanctions wasn't unjust. *Id.* at 647–48.

In contrast, here, plaintiffs have explained the inadvertent error that led them to omit the responsive documents from their original production. This omission wasn't the product of counsel's failure to communicate with its client or investigate whether other responsive documents existed. The error here amounted to a technical oversight when producing documents from an electronic document management database. Also, once the error was discovered,

plaintiffs quickly worked to determine what had caused the production "gaps," tried to fill the gaps by making supplemental document productions to defendant, and produced more discovery to defendant during the additional discovery period to cure the original oversight. Under these facts, sanctions are not warranted under Rules 16(f) or 37(b).

Also, the court declines to impose sanctions under Rule 37(c). As discussed above, the court has discretion to impose sanctions under this Rule. After considering the Rule 37(c) factors—as discussed above—the court finds the inadvertent delay in plaintiffs' production harmless. Defendant disagrees, but, on the whole, its arguments aren't persuasive. Defendant asserts that plaintiffs' failure to produce relevant documents earlier in the litigation has prejudiced defendant because plaintiffs' omission required the court to vacate the trial setting and delayed trial for almost a year. Thus, defendant asks for sanctions in the form of attorneys' fees and expenses to compensate defendant for the costs of delay and also to deter future misconduct of this nature.

Trying to support its argument that continuing the trial has prejudiced defendant, it cites a single case from a district court outside the Tenth Circuit. Doc. 419 at 19 (citing *Kirkland v. Cablevision Sys.*, No. 09 CIV 10235(LAP)(KNF), 2012 WL 4336193, at *4 (S.D.N.Y. Sept. 21, 2012)). This case doesn't help defendant much. It doesn't even involve sanctions. *Kirkland* denied a pro se plaintiff's motion to modify the scheduling order and reopen discovery after defendant had filed a summary judgment motion. When deciding whether good cause existed to grant plaintiff's motion, the court considered several factors—including the prejudice to defendant. *Id.* at *2. The court held that granting plaintiff's motion would prejudice defendant because it would "requir[e] the parties to prepare new summary judgment motions" and "delay unnecessarily the final resolution to this action." *Id.* at *4.

Here, it is true: plaintiffs' late disclosure of relevant evidence delayed the trial by almost a year. But it also gave defendant the opportunity to discover additional information from plaintiffs. And, after that additional discovery, defendant has identified no relevant documents that plaintiffs ultimately have failed to collect and produce. Under these facts and exercising its discretion, the court declines to impose sanctions based on any prejudice that defendant sustained from the trial delay because the other Rule 37(c) factors favor a finding that the late disclosure was harmless. *See, e.g.*, *Fidelity Nat'l Title Ins. Co. v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 752 (7th Cir. 2005) (holding that the court could cure any slight harm caused by a party's Rule 26 violation by granting a continuance to allow the opposing party to conduct additional discovery); *Dooley v. Altus Med. Corp.*, 61 F.3d 915, 1995 WL 324524, at *5 (10th Cir. May 31, 1995) (unpublished table opinion) (recognizing that plaintiff could remedy any prejudice from a late disclosure by seeking a continuance); *Payless Shoesource Worldwide, Inc. v. Target Corp.*, No. 05-4023-JAR, 2007 WL 2013574, at *7 (D. Kan. July 10, 2007) (refusing to impose sanctions based on a party's failure to disclose relevant evidence because the court postponed the trial date, and thus the disclosure would not disrupt the trial).

Also, as discussed in Part II of this Order, the trial delay revealed that defendant had its own discovery shortcomings during the original discovery period. It had withheld documents based on dubious privilege designations. But for the additional discovery period—that allowed defendant's withholding to come to light—defendant may never have produced the privileged documents to plaintiffs. On this record, the court declines to impose sanctions against plaintiffs for their imperfect discovery efforts because defendant's discovery conduct was less than ideal. *See, e.g.*, *Gassaway v. Jarden Corp.*, 292 F.R.D. 676, 689 (D. Kan. 2013) (declining to impose sanctions under Rule 37(a) when "[b]oth parties are at fault to some degree"); *Williams v.*

*Sprint/United Mgmt. Co.*, 245 F.R.D. 660, 674 (D. Kan. 2007) (concluding that an award of sanctions against either party was unjust when "each of the parties here contributed to the need for Court intervention"); *Gipson v. Sw. Bell Tel. Co.*, No. 08-2017-EFM-DJW, 2009 WL 790203, at *20 (D. Kan. Mar. 24, 2009), *objections sustained in part and overruled in part on other grounds,* 2009 WL 4157948 (D. Kan. Nov. 23, 2009) (declining to impose sanctions or award fees and expenses when "*both* sides [had] failed to satisfy their Rule 26(g) duties").

### B. Plaintiffs' Compliance with Court Orders

Next, defendant argues the court should sanction plaintiffs under Rule 37(d)[5] for creating more delays during the additional discovery period "by failing to prepare witnesses for initial 30(b)(6) depositions, failing to fully answer interrogatories, and failing to produce a witness for some topics in a reopened 30(b)(6) deposition." Doc. 401 at 23. Defendant contends that plaintiffs' "unwillingness to provide straightforward answers, or any answer, to questions about how they conducted discovery expanded what could have been a relatively short continuance into an eight-month battle to learn facts . . . ." *Id.* But defendant's description of plaintiffs' conduct contradicts the record. Also, it stands in stark contrast to Judge Sebelius's summary of plaintiffs' efforts during the additional discovery period.

---

[5]     Rule 37(d)(1)(A)(i) provides that a court "*may* issue" sanctions if "a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." Rule 37(d)(3) provides the types of sanctions that a court may impose for violating this Rule:

> Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

*Id.*

During the additional discovery period, Judge Sebelius granted defendant leave to take plaintiffs' Rule 30(b)(6) deposition but limited the scope of that deposition to this: "how plaintiffs identified and collected documents for review and production." Doc. 367 at 1. Consistent with Judge Sebelius's Order, defendant filed a Rule 30(b)(6) deposition notice, and, on March 23, 2018, plaintiffs produced two corporate representatives for a Rule 30(b)(6) deposition. After taking those depositions, defendant filed a Motion to Compel, asking Judge Sebelius to reopen the Rule 30(b)(6) depositions because, defendant argued, plaintiffs' witnesses were not prepared to answer certain deposition topics. *Id.* at 2. Defendant also asked Judge Sebelius to compel plaintiffs to designate one of their own attorneys as a Rule 30(b)(6) witness because, defendant argued, counsel is the only person who likely could address defendant's questions about plaintiffs' document collection and production. *Id.* at 7. Judge Sebelius refused. *Id.* But, in fairness, he also found that plaintiffs had not prepared their Rule 30(b)(6) witnesses to testify on certain topics. *Id.* at 5. Thus, Judge Sebelius granted defendant's request to reopen the Rule 30(b)(6) deposition for certain topics and limited the deposition to four hours. *Id.* at 7. Also, he ordered defendant to "make every reasonable effort to obtain [the] information from . . . supplemental interrogatories . . . before resorting to reopening the Rule 30(b)(6) deposition." *Id.*

Defendant served the interrogatories as Judge Sebelius directed, and plaintiffs provided responses. Still, defendant took the reopened Rule 30(b)(6) deposition on August 15, 2018. But in its current sanctions motion, defendant argues that plaintiffs' interrogatory responses still "left a number of questions . . . unanswered" and plaintiffs' Rule 30(b)(6) witnesses still could not answer all deposition topics during the reopened deposition. Doc. 401 at 25. Specifically, defendant contends that plaintiffs never produced a witness to testify about certain technical aspects of plaintiffs' electronic systems. *Id.* But that was because plaintiffs had no witness who

could testify on those topics.  *Id.*  Instead, plaintiffs explained to defendant that their software

manufacturer, EMC Corporation, likely could answer their questions.  *Id.*  Plaintiffs also directed

defendant's counsel to publicly available information about EMC's software product located on

its website and in its manuals, asked EMC and its representatives for information, and passed

along an offer from EMC to provide an affidavit answering defendant's questions.  Doc. 408 at

73–74.  Defendant refused the offer and, instead, noticed EMC for deposition in Boston.  *Id.* at

75; *see also* Doc. 386.  EMC filed a Motion to Quash the deposition notice in the District of

Massachusetts.  The Massachusetts federal court granted the motion, finding "the relevance of

the areas of requested testimony to the underlying issues in the case to be dubious" and

identifying "no reason to doubt EMC's representation that the information is publicly available

to defendant on EMC's website."  Doc. 401-18 at 3.

Despite plaintiffs' efforts to provide the information defendant had sought, defendant

argues that plaintiffs did not conduct "a reasonable inquiry" to locate relevant and responsive

documents because "they do not know the impact of their systems' limitations."  Doc. 401 at 26.

Defendant thus asks the court to issue a substantive sanction, informing the jury about plaintiffs'

discovery failures and instructing them that relevant and responsive documents likely exist and

are not available in this case because plaintiffs failed to collect and produce them.  *Id.*  The

record doesn't support such a sanction.  Nor do the Federal Rules support sanctioning plaintiffs

with an adverse inference instruction.  Under Rule 37(e)(2), a court may give the jury an adverse

inference instruction when "electronically stored information that should have been preserved in

the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to

preserve it," but "*only* upon finding that the party acted with the *intent to deprive* another party."

Fed. R. Civ. P. 37(e)(2) (emphasis added).  The advisory committee's notes to this Rule caution

that "[n]egligent or even grossly negligent behavior does not support [an adverse] inference [instruction]." Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment. Here, the record doesn't demonstrate that plaintiffs intended to deprive defendant of information. Instead, as already discussed, the court finds that plaintiffs engaged in reasonable discovery efforts under the facts presented. And errors in that effort were the product of negligence and mistake—not intentional conduct or bad faith.

Also, contrary to defendant's assertions, plaintiffs willingly provided the information that defendant sought about plaintiffs' collection and production efforts. Although Judge Sebelius initially found that plaintiffs had not prepared their Rule 30(b)(6) witnesses to testify about certain topics, plaintiffs complied with his orders to respond to written interrogatories and produce the 30(b)(6) witnesses for a reopened deposition. In the end, Judge Sebelius described plaintiffs' efforts in this fashion:

> To cooperate, plaintiffs have stipulated to much of the discovery that has occurred during this period. In addition to merits discovery, the parties have engaged in substantial meta-discovery. Plaintiffs have provided detailed descriptions of the searches conducted against collected documents, served detailed responses and amended responses to interrogatories seeking information about plaintiffs' discovery efforts, and produced Rule 30(b)(6) designees to testify about these issues. This is in addition to the informal discovery concerning plaintiffs' discovery efforts. Yet, in every status conference with the court or motion to compel, defendant still requested more—in one instance even moving to compel plaintiffs to designate their own attorney as a Rule 30(b)(6) deponent. Discovery has its limits, and any further meta-discovery is simply not proportional to the needs of this case given the substantial amount of meta-discovery already permitted and because this additional period of discovery and multiple discovery disputes have significantly delayed the trial.

Doc. 395 at 8–9. Importantly, defendant never objected to Judge Sebelius's Order or his conclusions. Likewise, defendant never objected to Judge Sebelius's rulings rejecting defendant's requests for more discovery on plaintiffs' collection and production efforts. On this record, the court rejects defendant's assertions that plaintiffs failed to comply with court orders

and frustrated the purpose of the additional discovery period. Plaintiffs' conduct during the additional discovery period does not merit a sanctions award under Rule 37(d) or any other aspect of the Federal Rules.

### C. Plaintiffs' Document Identification and Collection Processes

Defendant next argues that the court should impose sanctions on plaintiffs because the additional discovery period revealed that plaintiffs used unreasonable and indefensible document collection processes. Defendant criticizes plaintiffs' collection efforts in several ways.

*First*, defendant asserts that plaintiffs violated their discovery obligations because they never implemented a litigation hold. But not every case requires a legal hold. For example, "where all potentially relevant information is already secured" a legal hold notice "will not be necessary." *The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1, 104, 103–08 cmt. 5.d. (2018). Here, plaintiffs explained in detail the action they took to secure relevant information both from their Topeka and non-Topeka personnel.[6] *See* Doc. 408 at 87–92. And, importantly, the discovery problem here—*i.e.*, the so-called "gaps" in plaintiffs' production—did not result from a failure to implement a litigation hold. Instead, the "gaps" resulted from an error in the document management database's production parameters. Nothing was lost in the

---

[6]    Defendant also argues that plaintiffs' collection efforts were deficient because they didn't preserve hard drives for any non-Topeka custodians. Doc. 419 at 8. But the parties specifically agreed in their ESI Protocol that "it is not necessary to create forensic snapshot images of the custodians' laptop or desktop hard drives at this time." Doc. 103 at 13. Also, plaintiffs asked the non-Topeka custodians to identify and preserve any relevant documents they had saved on individual hard drives. And, as plaintiffs' Rule 30(b)(6) witness testified, all but one of plaintiffs' custodians saved their documents to the company's network—not their local hard drives. Under these facts, the court can't see how plaintiffs violated any discovery obligation by failing to preserve non-Topeka custodians' hard drives. Instead, plaintiffs complied with their discovery obligations by working to capture the relevant information through other preservation methods. And defendant identifies no documents or other information that was lost or destroyed because plaintiffs failed to preserve the hard drives.

production "gaps." Plaintiffs had collected and preserved the documents, and they later produced the documents to defendant after they realized the inadvertence that affected their original production. Indeed, defendant identifies no documents or information that plaintiffs lost because they failed to implement a legal hold. On these facts, the court declines to sanction plaintiffs because they didn't impose a litigation hold notice. *See The Sedona Conference Commentary on Legal Holds: The Trigger & The Process*, 11 Sedona Conf. J. 265, 279–80 (2010) (explaining that "there is no per se negligence rule" when it comes to litigation holds and "if the organization otherwise preserved the information then there is no violation of the duty to preserve"); *see also Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2013 WL 4028759, at *3 n.14 (D. Kan. Aug. 7, 2013) (explaining that "sanctions are not appropriate for [an] alleged general failure to implement a proper litigation hold, absent a showing of prejudice"); *School-Link Techs., Inc. v. Applied Res., Inc.*, No. 05-2088-JWL, 2007 WL 677647, at *4 (D. Kan. Feb. 28, 2007) (declining to impose sanctions for defendant's failure to implement a litigation hold because plaintiff never identified any relevant documents or information that were destroyed).

*Second*, defendant argues, plaintiffs improperly relied on custodians to identify relevant documents for collection. Defendant asserts that it is improper to place "total reliance on the employee to search and select what that employee believed to be responsive records without any supervision from Counsel." *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 685 F. Supp. 2d 456, 473 (S.D.N.Y. 2010), *abrogated on other grounds by Chin v. Port Auth. of N.Y. & N. J.*, 685 F.3d 135, 162 (2d Cir. 2012); *see also Claredi Corp. v. SeeBeyond Tech. Corp.*, No. 4-04-cv-01304 RWS, 2010 WL 11579710, at *4 (E.D. Mo. Mar. 8, 2010) ("Placing reliance on non-lawyer records custodians to self-collect documents *without supervision by counsel* is a practice which has been frequently questioned." (emphasis added)).

Defendant accurately recites the law, but hasn't marshalled any facts to establish that plaintiffs' counsel placed *total reliance* on employees to collect documents with *no supervision* over the process. Instead, the record shows that counsel communicated many times with non-Topeka based custodians throughout the case to identify and locate relevant documents existing outside of the Topeka server or the RadNet email server—both of which plaintiffs already had secured.[7] Doc. 408 at 21–25, 88–89. Defendant seems to criticize plaintiffs' counsel for failing to conduct—personally—a physical search for documents at each of the non-Topeka based offices throughout the country. But defendant cites no case law requiring that level of physical participation by counsel. Here, plaintiffs' counsel reasonably monitored plaintiffs' employees remotely and communicated with them about their identification, collection, and preservation of relevant documents in this lawsuit.

As one court has explained, "the Federal Rules of Civil Procedure require only a reasonable search for responsive information pursuant to a 'reasonably comprehensive search strategy.'" *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (quoting *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006)). They impose "'no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files[.]'" *Id.* (quoting *Treppel*, 233 F.R.D. at 374). And "'[i]n an era where vast amounts of electronic information is available for review, . . . [c]ourts cannot and do not expect that any party can meet a standard of perfection.'" *Id.* (quoting *Pension Comm.*, 685 F. Supp. 2d at 461). Here, plaintiffs have explained how they implemented a reasonably comprehensive search strategy designed to capture and secure relevant documents from non-

---

[7] Defendant even sought to discover plaintiffs' counsel's email communications with employees about their document collection efforts. Doc. 401 at 11 (citing Doc. 392). Judge Sebelius denied defendant's Motion to Compel these communications after concluding that "the interests of justice do not favor production." Doc. 395 at 11.

Topeka based custodians. The court finds these efforts sufficed to meet their discovery obligations.

*Third*, defendant argues that plaintiffs failed to conduct a comprehensive search for relevant emails because they never searched the non-Topeka custodians' hard drives for PST files. Defendant explains that PST files contain emails and other Microsoft Outlook items that were saved to the computer's hard drive—not plaintiffs' email server. Although plaintiffs never searched the custodians' hard drives for PST files, the record establishes that plaintiffs asked the custodians about the locations where they saved their emails—whether inside Outlook or somewhere else. Doc. 401-20 at 8 (Rarrick Dep. 39:24–40:14). Defendant even recognizes that plaintiffs' counsel communicated with employees about identifying, locating, and securing PST files. Doc. 401 at 10–11. Indeed, defendant sought to compel production of those communications. *Id.* But Judge Sebelius denied defendant's Motion to Compel. Doc. 395. On these facts, the court finds plaintiffs' efforts to identify and collect relevant PST files were reasonable ones.

*Finally*, defendant asserts that plaintiffs' searches across its email archives were flawed because the system did not index subcontainers or metadata. Plaintiffs thoroughly addressed this indexing issue during the additional "discovery on discovery" period. Plaintiffs explained in interrogatory responses that its email archiving program indexed all fields except for only two forms of email *attachments*: (1) the metadata of *attachments* to emails (but not the actual content of the attachments—which was indexed), and (2) nested subcontainer attachments (*i.e.*, zipfiles). Doc. 401-23 at 3–4, 36. Defendant cites no cases holding that a party's failure to index metadata of attachments or nested subcontainer attachments violates a discovery obligation. Also, here, the parties' ESI Protocol specifically recognized that the ability to search electronic information

may have limitations. They agreed: "[T]here may be attachments that are not searchable due to technical reasons or the format in which they were created." Doc. 103 at 14. On these facts, the court declines to impose sanctions against plaintiffs based on the indexing capabilities of its email archiving system.

Also, defendant complains about plaintiffs' searches because, defendant contends, plaintiffs never identified the search terms they ran across their system, when they ran them, and whether the system limited the number of hits returned. To support this argument, defendant relies on testimony from plaintiffs' Rule 30(b)(6) witness during the first deposition. Although the witness wasn't able to answer the questions at the deposition, plaintiffs provided the information to defendant after the deposition. Plaintiffs' counsel confirmed with a former IT employee who ran the searches across the email archives that he used the search terms from the ESI Protocol and that he set the dialogue box to a maximum number of hits "so high that it would not be an issue."[8] Doc. 401-15 at 3. Defendant doesn't dispute any of this. Instead, defendant criticizes plaintiffs for keeping no "record" of this information. But the confirmation from the IT employee is sufficient to establish that he ran the searches and that he set the maximum number of search results so high that it couldn't have limited the hits returned in the search.

In sum, none of defendant's criticisms about plaintiffs' document identification and collection processes establish that plaintiffs' efforts were unreasonable. The court thus denies defendant's request to impose sanctions against plaintiffs based on their discovery efforts.

---

[8]     Plaintiffs' counsel also confirmed that a user can set the search dialogue "maximum hits" box as high as 999,999,999. Doc. 401-15 at 3. That limit seems sufficient.

### D. Plaintiffs' Document Review Process

Last, defendant asks the court to sanction plaintiffs for failing to perform a reasonable document review. Defendant argues that plaintiffs' review was flawed for two reasons.

*First*, defendant asserts that plaintiffs improperly relied on Jayne Rarrick, an accountant employed by plaintiffs, to collect and identify responsive documents. But, as plaintiffs explain, Ms. Rarrick had significant knowledge and familiarity with the case's issues. She was the former lead administrator of plaintiffs' operations in Topeka and the only employee left after plaintiffs closed their offices there. With the aid of counsel and after receiving training, Ms. Rarrick reviewed documents for relevancy and responsiveness. Doc. 401-23 at 27; Doc. 409-1 at 4 (Rarrick Suppl. Aff. ¶ 19). Also, she communicated with counsel regularly because she was "a resource for purposes of understanding the meaning, significance or context of certain ESI or categories of ESI and trying to determine whether they were relevant or responsive to the issues as they were understood at the time." Doc. 401-23 at 30. Ms. Rarrick also worked with counsel to prepare responses to discovery requests and help find documents responsive to the requests. Doc. 409-1 at 4 (Rarrick Suppl. Aff. ¶ 19). But Ms. Rarrick never made any decisions about whether a document was subject to privilege. *Id.*

Defendant concedes that nonlawyers can perform some legal work as long as they receive appropriate supervision from a licensed attorney. Doc. 419 at 17. Kansas Rule of Professional Conduct 5.3(b) requires "a lawyer having direct supervisory authority over the nonlawyer shall make *reasonable efforts* to ensure that the person's conduct is compatible with the professional obligations of the lawyer." Kan. R. Prof'l Conduct 5.3(b) (emphasis added). Here, plaintiffs' description of Ms. Rarrick's involvement in the document review process shows that she received training and assistance from counsel—both before and during the work she performed.

And counsel never permitted Ms. Rarrick to make privilege determinations. The court thus finds that plaintiffs' counsel used reasonable efforts to supervise her work. And the court finds nothing improper about Ms. Rarrick's involvement in the document review process.[9]

*Second*, defendant argues that plaintiffs failed to conduct a reasonable review because they never reviewed all the ESI that they collected. Defendant again criticizes plaintiffs' "targeted" review of emails that had hit on the agreed-upon search terms. And defendant contends that this "targeted" review violated the ESI Protocol. For reasons already explained, the court rejects defendant's argument that plaintiffs violated the ESI Protocol. *See* Part I.A.2. The court also declines to conclude that plaintiffs' document review process was "flawed" simply because they used the "targeted" review method. As plaintiffs repeatedly assert, they meant to produce to defendant *all* the non-privileged documents that hit on the search terms in their original productions. But, because plaintiffs' counsel inadvertently erred when setting the production parameters in the document management database, the production didn't include all of those documents. Once plaintiffs discovered the error, they reviewed their productions, determined what caused the "gaps," and produced the responsive documents to defendant.

Defendant takes issue with plaintiffs' failure to review documents from specific custodians—particularly Scott Linden. Doc. 401 at 18, 33. But nothing in the discovery rules or

---

[9]    Defendant cites two Fair Labor Standards Act ("FLSA") cases where courts rejected plaintiffs' claims for overtime compensation because, the courts held, plaintiffs (who were attorneys) performed document review that required them to exercise professional legal judgment and thus exempted them from the FLSA's requirements. *See Henig v. Quinn Emanuel Urquhart & Sullivan, LLP*, 151 F. Supp. 3d 460, 471 (S.D.N.Y. 2015); *Oberc v. BP PLC*, No. 13-CV-1382, 2013 WL 6007211, at *6 (S.D. Tex. Nov. 13, 2013). The facts of those cases differ significantly from Ms. Rarrick's involvement here. *See Henig*, 151 F. Supp. 3d at 469 (holding that plaintiff's review "involved more than the largely mindless task that would result from following [counsel's] instructions" but instead required him to tag documents for privilege); *Oberc*, 2013 WL 6007211, at *6 (concluding that plaintiff used "legal judgment" when reviewing documents because, among other things, he reviewed documents for redactions and privilege). Unlike the attorneys at issue in *Henig and Oberc*, Ms. Rarrick never made privilege determinations in her document review work.

ESI Protocol required plaintiffs to review *all* documents from particular custodians. Instead, plaintiffs made reasonable efforts to identify responsive documents by running search terms against the entire collection of documents—a collection that included documents from the relevant custodians, including Mr. Linden. Although plaintiffs' document review process wasn't perfect, the court finds that it was reasonable under the facts here.

### E.  Conclusion

Defendant asserts that the volume of electronic discovery involved in this case isn't unique or remarkable. That's probably true. Even so, this case required plaintiffs to collect millions of documents and, from that collection, produce more than 700,000 documents. When dealing with this kind of volume, reasonable and responsible people may make mistakes. Plaintiffs have explained adequately how the mistake here occurred. And plaintiffs have cured their discovery shortcomings sufficiently by the remedial action they took during the additional discovery period. The court declines to conclude—in hindsight—that plaintiffs should have used different collection or searching methods to identify and produce relevant documents before trial. The additional discovery period allowed plaintiffs to locate and produce additional relevant documents to defendant. And the additional time permitted defendant to review those documents and ask the court for additional discovery where warranted. In the end, defendant identifies no documents or information that plaintiffs ultimately failed to collect or produce. On this record, the court declines to impose sanctions against plaintiffs for their late discovery and disclosure of relevant documents.

## II.  Plaintiffs' Motion for Sanctions

The court now to turns to plaintiffs' Motion for Sanctions. Plaintiffs seek sanctions against defendant for two reasons. First, plaintiffs assert that defendant deliberately and

improperly withheld from production highly relevant emails because, defendant claimed, they were privileged. Second, plaintiffs argue, defendant failed to preserve emails and documents from Dr. Tim Allen—one of defendant's radiologists and Chairperson of RNM's Management Committee. The court considers each of plaintiffs' arguments separately, below.

But before turning to the substance of plaintiffs' arguments, the court addresses defendant's assertion that plaintiffs have failed to raise their sanctions arguments in a timely fashion. Defendant contends that plaintiffs could have raised their arguments during the original discovery period, and thus, defendant argues, the court shouldn't entertain them now. Doc. 418 at 7. Defendant's argument is not well-taken. As defendant has done in its own sanctions motion, plaintiffs' motion asks the court to sanction defendant for purported discovery violations that plaintiffs discovered during the additional discovery period. Specifically, plaintiffs discovered defendant's privilege withholdings during the additional discovery period *only after* defendant produced a privilege log for the very first time in the case, plaintiffs challenged some of the privilege designations on that log, and defendant de-designated some of the documents and produced them to plaintiffs. Plaintiffs aren't seeking to compel documents or secure additional discovery outside the court's discovery schedule. Instead, as defendant did, plaintiffs are asking the court to sanction defendant for purported discovery abuses that plaintiffs learned about only after discovery reopened. That's the same thing defendant tries to do with its sanctions motion. The court thus rejects defendant's timeliness argument.

### A. Defendant's Withholding of Documents Based on Privilege Grounds

As already explained, the parties exchanged privilege logs for the first time in the litigation during the additional discovery period. This approach, of course, isn't ideal. But it's what happened. After plaintiffs reviewed defendant's privilege log, they challenged some of

defendant's privilege designations, questioning whether the documents properly qualified for work product privilege. Defendant represents that it attempted "to resolve the discovery dispute without Court intervention," and thus de-designated and produced certain documents previously listed on its privilege log. Doc. 418 at 4. Defendant maintains that its assertions of the work product privilege were reasonable but, nevertheless, it produced the documents to plaintiffs "to avoid a lengthy discovery battle after counsel for [defendant] determined that the documents neither were damaging nor particularly relevant." *Id.* at 8.

Plaintiffs represent that this supplemental production consisted of 166 additional pages of emails not disclosed. Doc. 407 at 6. And plaintiffs contend that the new emails are "highly relevant and damaging to [defendant's] position" because they include discussion among defendant's physicians asking whether defendant had a sufficient reason to assert that plaintiffs had breached the parties' contract. For example, the additional production includes an email authored by one of defendant's physicians—Dr. Patrick Landes. Doc. 407-10. Dr. Landes's email questions whether defendant can prove that "Radnet does not meet the relative/vague vision of the service agreement" and predicts that plaintiffs "will be able to explain away that they provide service locally and at a national level for support." *Id.* at 1. Dr. Landes also suggests "find[ing] a creative means to circumvent the service agreement." *Id.*

After reviewing Dr. Landes's communications, plaintiffs asked defendant if it would agree to produce Dr. Landes for a two hour deposition limited to questions about the recently produced, de-designated documents. Defendant refused. Defendant asserted that plaintiffs already had taken the maximum number of depositions allowed by the Scheduling Order. Plaintiffs then asked Judge Sebelius to compel Dr. Landes's deposition. Doc. 378. Over

defendant's objection, Judge Sebelius granted plaintiffs' motion and ordered defendant to produce Dr. Landes for a two-hour deposition. Doc. 384.

Plaintiffs now ask the court to sanction defendant for withholding the now de-designated documents under Fed. R. Civ. P. 30(d)(2) and 37(a)(5). Rule 30(d)(2) provides that a court "*may impose* an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." *Id.* (emphasis added). Rule 37(a)(5) provides, if a party succeeds on a motion seeking to compel discovery, the court "*must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." *Id.* (emphasis added). But the court "must not order" sanctions under this rule if "the opposing party's nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." *Id.*

Here, plaintiffs argue that defendant wrongfully withheld 166 pages of documents on a work product privilege even though the communications were between non-lawyers and were not made for the purpose of securing legal advice. *See, e.g.*, *Kannady v. Ball*, 292 F.R.D. 640, 648 (D. Kan. 2013) (explaining "the work-product doctrine protects from discovery those documents, things and mental impressions of a party or its representative, particularly its attorney, developed in anticipation of litigation. The doctrine is not intended to protect work prepared in the ordinary course of business or investigative work unless it was done so under the supervision of an attorney in preparation 'for the real and imminent threat of litigation or trial.'" (quoting *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007))). In response, defendant contends, it was entirely reasonable for defendant to assert work product

privilege for communications among defendant's physicians because: (1) the communications were made in late 2010 and early 2011 and mid-2014 to 2015 when defendant was anticipating litigation, and (2) the communications "contained discussion among [defendant's] shareholders regarding legal advice that [defendant] was seeking from counsel." Doc. 418 at 8.

After reviewing the communications, the court is not convinced that all the de-designated documents contain discussions about legal advice. Instead, many of the communications—like Dr. Landes's email described above—discuss the underlying facts of the dispute—*i.e.*, whether plaintiffs had breached their obligations under the parties' contract. And the documents don't include discussions about securing legal advice from counsel. Nevertheless, the court declines plaintiffs' request to impose sanctions against defendant under Rules 30(d)(2) or 37(a)(5). Exercising its discretion, the court finds that an award of attorney's fees is not necessary here based on what has transpired during the additional discovery period.

During the reopened discovery period, defendant produced the de-designated emails to plaintiffs, plaintiffs had ample time to review the supplemental production, and they took Dr. Landes's deposition to question him about the additional emails. The court recognizes that plaintiffs lost the opportunity to use the de-designated documents during the original discovery period in depositions of defendant's other physicians. Indeed, plaintiffs assert that they "could have legitimately asked for the reopening of every single [defendant] physician deposition and the deposition of David Smith." Doc. 407 at 10. But plaintiffs didn't seek that relief from Judge Sebelius. Instead, plaintiffs concede, they "wished to be tempered in their reaction" and thus only sought the two-hour deposition of Dr. Landes. *Id.* Plaintiffs made that decision even though—as they now concede—they could have asked the court to reopen other depositions so that plaintiffs could question other witnesses about the newly-produced documents.

Also, the court recognizes that plaintiffs have incurred attorneys' fees in their efforts to discover the de-designated documents and depose Dr. Landes about them. But defendant also incurred attorneys' fees during the additional discovery period to discover the information that plaintiffs inadvertently had failed to produce during the original discovery period. As discussed above, the court declines to impose sanctions in the form of attorneys' fees when both sides had their own discovery shortcomings that caused the other side of the caption to incur attorneys' fees during the additional discovery period. The court thus denies the portion of plaintiffs' sanctions motion asking the court to impose sanctions for defendant's withholding of documents on dubious claims of work product.

## B. Dr. Tim Allen's Emails and Documents

Next, plaintiffs ask the court to sanction defendant for failing to preserve Dr. Allen's emails before 2011. Plaintiffs explain that during the additional discovery period they found among their production emails between plaintiffs' employee, Jayne Rarrick, and Dr. Allen—the Chairperson of defendant's Management Committee. The emails were exchanged in 2010, and Dr. Allen sent the emails from his personal email address. Plaintiffs questioned why defendant hadn't produced these same emails from Dr. Allen's personal email account. Defendant responded that Dr. Allen did not have any pre-2011 emails in his personal account. Plaintiffs now accuse defendant of spoliation because defendant failed to preserve Dr. Allen's emails from 2010—a time when defendant was anticipating litigation. Thus, plaintiffs seek sanctions against defendant under Rule 37(e).

Rule 37(e) provides:

Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

>   (A) presume that the lost information was unfavorable to the party;
>
>   (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>   (C) dismiss the action or enter a default judgment.

*Id.*

In response, defendant asserts that Rule 37(e) does not permit the court to impose an adverse inference instruction here because the factual record won't support a "finding that the party acted with the *intent to deprive* another party of the information." Fed. R. Civ. P. 37(e) (emphasis added). Dr. Allen represents that he used his personal email account during the time plaintiffs managed defendant's business. Cox Communications is the internet provider for Dr. Allen's personal email account. Dr. Allen understands that Cox Communications imposes a storage limit on his personal email account and that the account automatically deletes older emails as necessary to keep the email account below the storage limit. Dr. Allen attests by Affidavit that he thought he was preserving all emails about the parties' dispute and that he didn't know about the storage limits for his personal account until his email was collected for the lawsuit. Doc. 418-6 at 3 (Allen Aff. ¶ 7). Also, Dr. Allen represents that he never intentionally deleted any emails about the parties' contract. *Id.* (Allen Aff. ¶ 8).

Plaintiffs don't cite any facts capable of supporting a finding that defendant intended to deprive plaintiffs of Dr. Allen's emails before 2011. But, even if Dr. Allen didn't act with the intent to deprive, plaintiffs argue the court still should sanction defendant for Dr. Allen's gross

negligence. Doc. 407 at 20. As already discussed, the advisory committee's notes to Rule 37(e) instruct that "[n]egligent or even grossly negligent behavior does not support [an adverse] inference [instruction]." Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment. The court declines to sanction defendant with an adverse inference instruction.

Also, the court declines to sanction defendant by imposing an award of attorneys' fees based on a failure to preserve Dr. Allen's emails. Under Rule 37(e)(1), the court has discretion to award sanctions against a party for failing to preserve ESI "upon finding prejudice to another party from loss of the information." Here, plaintiffs have not established that they were prejudiced by Dr. Allen's failure to preserve emails before 2011. Even though Dr. Allen didn't produce emails from 2010, plaintiffs have discovered other emails sent by or to Dr. Allen in other custodians' email accounts. And plaintiffs had those emails in their own collection when they deposed Dr. Allen during the original discovery period. Thus, plaintiffs had an opportunity then to ask Dr. Allen about emails from this period and ask him why he hadn't produced any emails from his personal email account for that period. But—as discussed—plaintiffs didn't focus their attention on Dr. Allen's 2010 emails until they found them *in their own production* during the additional discovery period. On these facts, the court declines to award sanctions against defendant for failing to preserve Dr. Allen's emails before 2011.

## III.    Conclusion

Both sides of the caption made imperfect discovery efforts. On the factual record presented, the court declines to impose sanctions against either plaintiffs or defendant for their respective shortcomings. The court thus denies the parties' competing sanctions motions.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Sanctions (Doc. 400) is denied.

**IT IS FURTHER ORDERED THAT** plaintiffs' Motion for Sanctions (Doc. 406) is denied.

**IT IS SO ORDERED.**

**Dated this 29th day of January, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**