# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| RADIOLOGIX, INC. and RADIOLOGY AND NUCLEAR MEDICINE IMAGING PARTNERS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>RADIOLOGY AND NUCLEAR MEDICINE, LLC,<br><br>Defendant. | Case No. 15-4927-DDC-KGS |

## MEMORANDUM AND ORDER

On February 5, 2019, a jury trial began in this case. After presenting evidence for about five days, plaintiffs rested their case in chief. At the close of plaintiffs' evidence, defendant filed a 27-page Motion for Directed Verdict as a Matter of Law at the Close of Plaintiffs' Evidence. Doc. 461. Plaintiffs have submitted a Response opposing defendant's motion. Doc. 465. After considering the parties' arguments and the evidence presented at trial—in the light most favorable to plaintiffs, the non-moving party—the court denies defendant's Motion for Directed Verdict.

### I.  Factual Background

This case involves a breach of contract dispute. Plaintiff Radiologix, Inc. ("Radiologix") is a national provider of imaging services based in California. Plaintiff Radiology and Nuclear Medicine Imaging Partners, Inc. ("RNMIP") is a wholly owned subsidiary of plaintiff Radiologix. Defendant Radiology and Nuclear Medicine, LLC ("RNM") is a Kansas limited liability company and physician-owned radiology practice based in northeast Kansas.

Since 1997, plaintiff Radiologix or one of its predecessors-in-interest has provided management services to defendant under a long-term management Service Agreement. This lawsuit arises from defendant's termination of that Agreement in 2014. Plaintiffs assert a breach of contract claim against defendant, alleging that defendant breached the parties' Agreement by terminating it in 2014. As a defense to this claim, defendant argues that it had a right to terminate the Agreement because plaintiffs had breached their material obligations to defendant under that Agreement.

Defendant also asserts a Counterclaim against plaintiffs for breach of contract. Defendant argues that plaintiffs breached the Agreement before the 2014 termination by failing to provide management, administrative, and billing services, as well as management and capital resources, to defendant as the Service Agreement requires.

Defendant's Motion for Directed Verdict argues that plaintiffs' evidence at trial establishes that they failed to perform their obligations under the Service Agreement. And thus, defendant contends, plaintiffs have failed to prove one of the essential elements of their breach of contract claim. Also, defendant contends that plaintiffs' evidence fails to prove their damages claim. Thus, defendant argues, plaintiffs' breach of contract claim fails as a matter of law. For both of these reasons, defendant asserts that it is entitled to judgment as a matter of law against plaintiffs' breach of contract claim.

**II.     Legal Standard**

Rule 50(a) provides:

(1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:

    (A) resolve the issue against the party; and

> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

When considering a Rule 50(a) motion, the court must draw "[a]ll reasonable inferences . . . in favor of the nonmoving party and [cannot] make credibility determinations or weigh the evidence." *Liberty Mut. Fire Ins. Co. v. Woolman*, 913 F.3d 977, 983 (10th Cir. 2019) (citations and internal quotations marks omitted). "Judgment as a matter of law is appropriate only if a 'reasonable jury would not have a legally sufficient evidentiary basis' to find for the opposing party." *Id.* at 983–84 (quoting Fed. R. Civ. P. 50(a)(1)). In other words, "'[t]he evidence [must] point[ ] but one way and [be] susceptible to no reasonable inferences which may support the opposing party's position.'" *Id.* at 984 (quoting *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)).

**III. Analysis**

Defendant asserts several arguments supporting its Motion for Directed Verdict. The court addresses each argument, separately, below.

### A. Does the Evidence Establish that Plaintiffs Failed to Perform Their Obligations Under the Service Agreement?

Defendant asserts that plaintiffs' evidence failed to prove one of the required elements of their breach of contract claim—that plaintiffs performed their obligations under the Service Agreement. In Kansas,[1] the elements of a breach of contract claim are: "(1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."

---

[1] The parties agree that Kansas law governs the Service Agreement and the parties' competing claims for breach of that Agreement. Doc. 227 at 2 (Pretrial Order ¶ 1.d.).

3

*Stechschulte v. Jennings*, 298 P.3d 1083, 1098 (Kan. 2013). Here, defendant asserts that plaintiffs cannot prove the third element of a breach of contract claim because plaintiffs' evidence establishes that plaintiffs failed to perform their obligations under the Service Agreement. Defendant argues that plaintiffs failed to perform their obligations under the Service Agreement in eight, different ways.[2]

### 1. Did plaintiffs fail to perform their obligations under the Service Agreement by reducing the scope of services under that Agreement while charging the same Service Fee?

Defendant argues that plaintiffs' evidence shows that plaintiffs failed to perform their obligations under the Service Agreement when they closed the Imaging Center and eliminated Technical Operations in Topeka in 2010, but still charged the same Service Fee under the contract.

Section 7.1 of the Service Agreement provides:

> Payment of the Service Fee is not intended to and shall not be interpreted or implied as permitting Administrator to share in the Group's fees for medical services but is acknowledged as the negotiated fair market value compensation to Administrator considering the scope of the services and the business risks assumed by Administrator.

---

[2] Defendant asserts that plaintiffs "must show that they performed all material obligations" of the parties' Agreement. Doc. 462 at 3. Plaintiffs argue that defendant misstates the burden of proof. The court agrees. Plaintiffs have the burden to prove that they performed, or were willing to perform, their obligations under the Agreement. As a defense, defendant argues that it had the right to terminate the Agreement because plaintiffs failed to perform *material* obligations to defendant under that Agreement. To prove that defense, defendant bears the burden to prove that plaintiffs materially breached the Agreement. In the analysis above, the court considers only whether plaintiffs' evidence presents a legally sufficient evidentiary basis for a reasonable jury to find that plaintiffs performed their obligations under the Service Agreement sufficient to support their breach of contract claim.

During a conference outside the jury's presence, the court commented that it doesn't read Kansas law as requiring a plaintiff to prove during its case in chief that it satisfied every one of its obligations under a contract to prevail on a breach of contract claim. The court still holds that view. But defendant has identified specific provisions of the Service Agreement that it asserts plaintiffs failed to perform. And defendant has pointed to evidence presented in plaintiffs' case that—it contends—shows plaintiffs have failed to perform those obligations. The court thus considers those arguments below.

4

Doc. 270-10 at 37.

Plaintiffs contend that defendant cannot assert this argument because defendant failed to preserve it in the Pretrial Order. In a narrow, technical sense, plaintiffs are correct. Doc. 227 at 26 ("Defenses of Defendant[ ]"). But defendant did provide fair notice that it would defend plaintiffs' contract claim by establishing, among other things, that "[p]laintiffs' were in material breach of the Service Agreement . . . ." *Id.* And though defendant advanced this defense as a reason providing it the right to terminate that Agreement, the court concludes it sufficed to preserve the argument defendant makes in its motion.

In contrast, the court is not persuaded by the substance of defendant's argument. Certainly, the parties could have made a bargain that entitled defendant to pay a reduced Service Fee if the services provided by plaintiffs should evolve or reduce. But that isn't what their contract provides. Section 7.1 specified a fee that defendant promised to pay. Also, the parties' Agreement reduced the size of that fee over time. *See* Doc. 270-10 at 57 (Exhibit 7.1 to Service Agreement). Had the parties necessarily intended for the Service Fee to reduce if, for example, Technical Operations were to cease, the Service Agreement shows they knew how to apply a reduced Service Fee. They didn't do that, however.

Last, defendant's argument fails to carry the day for one more reason. Defendant's premise is that plaintiffs owed a duty to do whatever was required to keep the Technical Operations operating. But that's not what their contract provides. Instead, it obligated plaintiffs to provide "all ordinary, necessary or appropriate services for the efficient operation of the Group and the Technical Operations . . . ." *Id.* at 16 (Section 3.1(f)). Under the standard adopted by Rule 50(a), a reasonable jury might find that plaintiffs' performance fell short of this standard. But also, they might reach the opposite conclusion. Given its duty to give the benefit

5

of "[a]ll reasonable inferences" to plaintiffs, the court cannot adopt defendant's argument. *Woolman*, 913 F.3d at 983.

> **2. Did plaintiffs fail to perform their obligations under the Service Agreement by failing to provide all non-physician professional support reasonably necessary for the efficient conduct of the Professional Operations, as Section 3.6 of the Service Agreement requires?**

Defendant next asserts that plaintiffs' evidence establishes that they failed to perform their obligations under the Service Agreement because they didn't provide all non-physician professional support reasonably necessary for the efficient conduct of the Professional Operations, as Section 3.6 of the Service Agreement requires.

Section 3.6 of the Service Agreement requires plaintiffs to provide "non-physician professional support . . . ." Doc. 270-10 at 20. Defendant asserts that plaintiffs failed to satisfy their obligations under these provisions in two ways: (1) by eliminating David Smith's position as a Practice Administrator; and (2) failing to provide IT support. The court rejects both arguments.

Section 3.6 lists several specific positions that the Administrator must provide. But it doesn't say anything about employing a Practice Administrator or one meeting specific criteria that Jayne Rarrick, Melissa McCall, or other Radiologix or RNMIP employees (Mr. Smith's functional replacements) didn't meet. The parties could have entered a contract requiring plaintiffs to supply and fund a full time Practice Administrator with David Smith's degrees, certification, and experience—but that's not the Agreement they made. Instead, plaintiffs promised in Section 3.6 to provide personnel "as is reasonably necessary for efficient conduct of Professional Operations and Technical Operations." Doc. 270-10 at 20. Perhaps the personnel plaintiffs provided weren't qualified by education or experience to satisfy these provisions, but

6

that's not the only reasonable conclusion a jury could reach based on the evidence presented in plaintiffs' case.

Also, defendant argues that plaintiffs failed to perform their obligations under Recital F when they refused to provide defendant with plaintiffs' eRad system (plaintiffs' proprietary PACS system) unless defendant paid for the system and someone to support it. Recital F provides that the "Administrator is willing to commit significant management and capital resources to the Group to allow for the Group's further growth, all as provided in this Agreement." *Id.* at 6. To say the least, Recital F is susceptible to multiple interpretations. A reasonable jury could conclude that plaintiffs' refusal to provide the eRad system to defendant failed its obligation to "commit significant management and capital resources to the Group to allow for the Group's further growth." But, viewing the evidence in the light most favorable to plaintiffs—the nonmoving party—a reasonable jury also could reach the opposite conclusion.

Defendant's argument assumes that Recital F is a term adopted by the parties' Agreement. The court's analysis makes the same assumption even though there is good reason to question this premise. Recital F is the last of six paragraphs comprising the Recitals. Those six paragraphs precede the following language: "NOW, THEREFORE . . . and on the terms and subject to the conditions herein set forth, the parties hereto agree *as follows* . . . ." Doc. 270-10 at 6 (emphasis added). A reasonable jury might find that the Recital paragraphs are a term of the contract—or they might not.

### 3. Did plaintiffs fail to perform their obligations under the Service Agreement by failing to maintain Technical Operations in or around Topeka after December 2010?

Defendant next argues that plaintiffs' evidence shows that plaintiffs failed to perform their obligations under the Service Agreement because they failed to maintain Technical

7

Operations in or around Topeka after December 2010. Plaintiffs assert that defendant is precluded from arguing that plaintiffs breached the Agreement by closing the Technical Operations because defendant never asserted this claim in the Pretrial Order. Indeed, the court ruled in limine that—although defendant had not asserted a claim of this nature in the Pretrial Order—defendant could present evidence that plaintiffs' closing of the Technical Operations was a symptom of plaintiffs' other alleged breaches of the Agreement. But the court has precluded defendant from asserting that closing the Technical Operations breached the Agreement or otherwise provided defendant with the right to terminate the contract.

Here, defendant isn't arguing that closing the Technical Operations establishes that plaintiffs breached the contract or provided defendant a right to terminate. Instead, defendant argues, this evidence shows that plaintiffs cannot prove one of the essential elements of *plaintiffs'* breach of contract claim—that it performed its obligations under the Agreement. Article VI of the Agreement provides: "The parties recognize that the services to be provided by the Administrator hereunder shall be feasible only if the Group operates active Professional Operations and, *in conjunction with Administrator, Technical Operations* to which the physicians associated with the Group devote their full medical time and attention." Doc. 270-10 at 22 (emphasis added). Several other provisions of the Agreement refer to the Technical Operations. The court finds that Section 3.1(a) is the provision that comes the closest to making a specific promise of what plaintiffs must provide under the contract for Technical Operations. It authorizes the Administrator "to perform its services hereunder as necessary or appropriate for the efficient operation of the Professional Operations and the Technical Operations . . . ." *Id.* at 12. A reasonable jury could conclude that plaintiffs failed to meet this obligation when it closed the Technical Operations. But—viewing the evidence in the light most favorable to plaintiffs—

8

that's not the only conclusion the jury could reach based on the contract language and the evidence submitted in plaintiffs' case.

> **4. Did plaintiffs fail to perform their obligations under the Service Agreement by failing to "relieve the Group to the maximum extent possible" of the administrative and other non-medical business aspects of the Group, as Section 3.2(a) of the Service Agreement requires?**

Defendant argues that plaintiffs' evidence shows that plaintiffs failed to perform their obligations under the Service Agreement because plaintiffs didn't "relieve the Group to the maximum extent possible" of the administrative and other non-medical business aspects of the Group. Section 3.2(a) of the Service Agreement provides:

> The Group agrees that the purpose and intent of this Agreement is to relieve the Group *to the maximum extent possible* of the administrative, accounting, purchasing, non-physician personnel and other non-medical business aspects of the Group.

Doc. 270-10 at 13 (emphasis added).

The evidence shows, defendant asserts, that defendant's physicians spent significant time on non-medical, *i.e.*, business aspects of defendant's business, and thus plaintiffs did not meet their obligation to "relieve" defendant of administrative obligations. Plaintiffs respond that defendant never asserted this alleged breach as a material default in the Pretrial Order, and thus it has waived this argument. Again, the court considers this argument—not because defendant asserts it was a material default—but because defendant argues that this evidence shows that plaintiffs failed to satisfy its obligations under the Service Agreement.

Yet again, the language of the Service Agreement uses a mushy standard: It requires plaintiffs to "relieve" defendant of administrative work "to the maximum extent possible." It is difficult to imagine—on a motion for judgment as a matter of law—a record capable of establishing that the service plaintiffs provided failed to meet the Agreement's mushy standard.

Although defendant cites evidence of administrative work defendant's physicians performed, the evidence presented in plaintiffs' case also includes evidence of the administrative support plaintiffs provided. Also, a reasonable jury could conclude that defendant's physicians unreasonably rejected plaintiffs' support and voluntarily undertook their own efforts to engage in administrative functions. Thus, viewing the evidence in light most favorable to plaintiffs, a reasonable jury could conclude that plaintiffs met the contract's requisite standard for providing administrative support. Plaintiffs' evidence also shows that defendant's physicians chose to organize a wide range of business oriented committees. Plaintiffs' evidence also shows that defendant's physicians wanted to participate significantly in business matters affecting their practice. There is nothing wrong with that and, indeed, that they chose to do so makes perfect sense. But their engagement does not mean that plaintiffs failed to meet their contractual obligation. And it certainly doesn't mean that as a matter of law.

> **5. Did plaintiffs fail to perform their obligations under the Service Agreement by failing to provide all ordinary, necessary, and appropriate computer and information management services, as Section 3.2(f) of the Service Agreement requires?**

Next, defendant argues that plaintiffs' evidence shows that plaintiffs failed to perform their obligations under the Service Agreement because they didn't provide all ordinary, necessary, and appropriate computer and information management services in breach of Section 3.2(f) of the Service Agreement.

Section 3.2(f) requires: "Administrator shall supply to the Group all ordinary, necessary or appropriate services for the efficient operation of the Group and the Technical Operations, including without limitation, . . . computer services [and] information management." Doc. 270-10 at 16.

Defendant asserts that the evidence establishes it spent significant capital to purchase a universal PACS system called Ramsoft. Plaintiffs provided no money or capital for the system, and also failed to provide necessary technical support to implement and support the system. Plaintiffs respond that Section 3.6(f) did not require them to purchase and support the Ramsoft system. Indeed, a reasonable jury could conclude that purchasing and supporting the Ramsoft system was not an "ordinary, necessary or appropriate service[ ]" that plaintiffs were required to provide under the contract. A reasonable jury also could find that plaintiffs provided the requisite support to defendant—for example, plaintiffs presented evidence that John Keffer visited Topeka and provided certain IT assistance. A jury also could reach the opposite conclusion. But the court cannot find that the evidence establishes—as a matter of law—that plaintiffs failed to perform this obligation under the Service Agreement.

### 6. Did plaintiffs fail to perform their obligations under the Service Agreement by failing to commit significant capital resources to defendant, as Section 3.5(b) and Recital F of the Service Agreement require?

Defendant argues that plaintiffs' evidence shows that plaintiffs failed to perform their obligations under the Service Agreement because they failed to commit significant capital resources to defendant, as Section 3.5(b) of the Service Agreement requires. Plaintiffs argue that defendant never asserted this alleged failure in Dr. Allen's November 26, 2010, notice of default letter. Also, defendant never asserted in the Pretrial Order that this alleged failure was a material breach of the parties' Agreement. Again, the court considers whether plaintiffs' evidence establishes that plaintiffs failed to perform their obligations under this provision of the Agreement—thus, failing to satisfy one of the elements of their breach of contract claim.

Section 3.5(b) requires the Administrator to "make funds available for capital expenditures and improvements by Administrator" for budgeted and non-budgeted expenses.

Doc. 270-10 at 19. Also, Recital F provides that the "Administrator is willing to commit significant management and capital resources to the Group to allow for the Group's further growth, all as provided in this Agreement." *Id.* at 6.

Defendant argues that the evidence shows that plaintiffs failed to perform their obligations under these provisions by refusing to purchase and support a PACS system for RNM. As previously discussed, Recital F is susceptible to many interpretations. Section 3.5(b) suffers from the same limitations. A reasonable jury could conclude that plaintiffs' refusal to provide a PACS system to defendant failed to satisfy plaintiffs' obligations under the Agreement to "make funds available for capital expenditures and improvements" and to "commit significant management and capital resources to the Group to allow for the Group's further growth." But, viewing the evidence in the light most favorable to plaintiffs—the nonmoving party—a reasonable jury also could reach the opposite conclusion.

**7. Did plaintiffs fail to perform their obligations under the Service Agreement by failing to implement an appropriate local public relations or advertising program for defendant, as Section 3.9 of the Service Agreement requires?**

Defendant argues that plaintiffs' evidence shows that plaintiffs failed to perform their obligations under the Service Agreement because they failed to implement an appropriate local public relations or advertising program for defendant, as Section 3.9 of the Service Agreement requires.

Section 3.9 provides: "In consultation with the Joint Planning Board, Administrator shall implement (and design where requested) an appropriate local public relations or advertising program, with appropriate emphasis on public awareness of the availability of services at the Practice Sites." Doc. 270-10 at 21.

12

Defendant argues that the evidence shows that plaintiffs failed to meet their obligations under this provision of the Agreement after the Imaging Center closed in 2010. Specifically, defendant argues that the evidence shows that plaintiffs' marketing expenses decreased from $31,774.55 in 2010, to $878 in 2011. But plaintiffs respond that the evidence also shows that defendant never complained about a lack of advertising, defendant never asked plaintiffs to engage in any further advertising efforts above what plaintiffs already were doing, and defendant never told plaintiffs that the amount of advertising was insufficient. Viewing the evidence in the light most favorable to plaintiffs, a reasonable jury could conclude from this evidence that plaintiffs engaged in an "appropriate" amount of advertising—which is all the Agreement requires. A reasonable jury also could reach the opposite conclusion. But, the court can't make that determination as a matter of law on this record.

8. **Did plaintiffs fail to perform their obligations under the Service Agreement by failing to provide consulting and advisory services as reasonably requested by defendant, as Section 3.11 of the Service Agreement requires?**

Finally, defendant argues that plaintiffs' evidence shows that plaintiffs failed to perform their obligations under the Service Agreement because they didn't provide consulting and advisory services as reasonably requested by defendant, as Section 3.11 of the Service Agreement requires.

Section 3.11 requires the Administrator to "provide such consulting and other advisory services as reasonably requested by the Group in all areas of the Group's business functions, including without limitation, financial planning, acquisition and expansion strategies, development of long-term business objectives and other related matters." Doc. 270-10 at 22.

Defendant cites evidence that—it argues—shows it requested consulting services from plaintiffs, but plaintiffs ignored those requests. Plaintiffs respond with citations to other

evidence that—they contend—shows that plaintiffs provided the requisite level of consulting and advisory services. Plaintiffs correctly argue that the jury must make the credibility decisions here and determine whether the evidence supports a finding that plaintiffs satisfied their obligations under the Agreement. Viewing the evidence in plaintiffs' favor, a reasonable jury could find that plaintiffs satisfied these obligations under the Agreement by providing appropriate consulting and advisory services. A reasonable jury also could reach the opposite conclusion. But it's not a question for the court to decide on defendant's Motion for Directed Verdict.

### B. Defendant asserts that it provided the requisite notice of defaults under the contract on both November 26, 2010, and October 6, 2014.

Next, defendant argues that it provided the requisite notice to plaintiffs of their alleged material defaults and gave plaintiffs the required opportunity to cure those defaults, but plaintiffs failed to cure. Doc. 462 at 22. Thus, defendant argues, the evidence establishes that it had a right to terminate the Service Agreement.

Section 10.3(b) allows RNM to terminate the Agreement "by giving written notice thereof to Administrator (*after the giving of any required notices and the expiration of any applicable waiting periods set forth below*)" if: (1) plaintiffs materially have defaulted on the duties imposed by the agreement and failed to cure their default within 60 days after being notified in writing of the default; and (2) two-thirds of RNM's equity holders have voted to approve the agreement's termination. Doc. 270-10 at 41 (emphasis added). Section 10.5 of the Service Agreement requires that "[a]ny termination of this Agreement shall be effective (the "Termination Date") as follows: (a) Immediately upon receipt of a termination notice pursuant to Section 10.3 or Section 10.4 (a "Termination Notice") and expiration of applicable cure periods . . . ." *Id.* at 43.

Defendant cites to evidence that, it contends, shows defendant properly notified plaintiffs of their default and gave them the opportunity to cure. Plaintiffs respond with citations to other evidence that—plaintiffs contend—shows defendant failed to provide plaintiffs with a notice of default and an opportunity to cure as the Service Agreement requires before defendant is permitted to terminate the Agreement. The court agrees that this is a fact issue that the jury must decide. And the court cannot conclude on the current record that the jury can only reach one conclusion on this issue.

### C. Defendant asserts that plaintiffs have failed to prove that they are entitled to recover damages.

Last, defendant argues that plaintiffs' breach of contract claim fails as a matter of law because they have not presented sufficient evidence of damages. Defendant makes two damages arguments.

#### 1. Defendant argues that the evidence establishes that plaintiff Radiologix has no rights under the Service Agreement—just obligations.

Defendant asserts that plaintiff Radiologix has no right to recover damages under the Service Agreement. The Service Agreement designates plaintiff RNMIP as the "Administrator" and plaintiff Radiologix as the "Parent." Doc. 270-10 at 6. Section 7.1 of the Agreement requires that "Administrator shall be paid the service fee . . . ." *Id.* at 37. Based on this language, defendant argues that its obligation to pay the Service Fee runs only to plaintiff RNMIP (the "Administrator")—and not Radiologix. Thus, defendant argues, it owes no Service Fee—or any monetary obligation—to plaintiff Radiologix and plaintiff Radiologix has no right to recover any damages against defendant under the Service Agreement.

Plaintiffs respond that the court already decided that both plaintiffs can recover under the contract when it denied defendant's Motion to Exclude plaintiffs' damages expert, Marc

15

Vianello. Thus, plaintiffs argue, defendant is precluded from making this argument based on the law of the case doctrine. The court disagrees. The court never before was presented with this specific issue—whether plaintiff Radiologix has a right to recover under the contract since the contract only requires payment of the Service Fee to the Administrator—RNMIP.

Nevertheless, the court declines to direct a verdict against plaintiff Radiologix's breach of contract claim based on Section 7.1 of the Service Agreement. Plaintiffs have presented a plausible damage theory at trial suggesting that both plaintiffs—as parties to the Agreement—sustained damages from defendant's alleged breach of it. Defendant had the opportunity to cross-examine plaintiffs' damages expert on this theory. The record presents a factual dispute about this question, and the court cannot conclude that the evidence (when viewed in plaintiffs' favor) establishes as a matter of law that plaintiff Radiologix can recover no damages.

One final observation is warranted. This argument by defendant tries to inject a new issue into the trial at the last minute. Defendant has known for several years that plaintiff Radiologix sought to recover contract damages. Defendant never identified this as an issue at summary judgment, nor when it disclosed it defenses in the Pretrial Order. Defendant's motion challenging Mr. Vianello's testimony never raised this question either. And defendant's motion asks the court to decide this undisclosed, substantive defense mid-trial even though granting defendant's motion wouldn't shorten this trial by one moment. Defendant never asserts that RNMIP can't recover damages, and the damages claim will continue whether Radiologix continues as a plaintiff—or not. If plaintiffs recover, defendant can raise this question in post-trial motions. But the court declines to dismiss a party's claim on a previously undisclosed basis when the litigants and the court already have devoted substantial trial efforts to the case.

### 2. Defendant argues that plaintiffs' damages estimates are based on revenues and expenses of non-parties.

Next, defendant asserts that plaintiffs have not proved that they sustained damages from defendant's alleged breach of the Service Agreement because plaintiffs' expert bases his damage calculations on revenues and expenses of RadNet, Inc. and RadNet Management, Inc.—neither of whom are parties to the lawsuit. Plaintiffs elicited testimony from Mr. Vianello (plaintiffs' damages expert) about how and why he calculated plaintiffs' damages in the way that he did. Mr. Vianello explained why—in his expert opinion—he has calculated the damages sustained by the named plaintiffs. Defendant had an opportunity to cross-examine Mr. Vianello about his calculations—and specifically about whether he improperly considered revenue and expenses of non-parties to the case. The jury must decide the weight and credibility to give to Mr. Vianello's damages testimony. Viewing the evidence in the light most favor to plaintiffs, the jury could decide that he properly calculated the damages that the named plaintiffs sustained. The jury also could reach the opposite conclusion—finding that Mr. Vianello improperly calculated plaintiffs' damages by including the revenue and expenses of other RadNet entities. But the court cannot decide this issue on a Motion for Directed Verdict.

## IV. Conclusion

For the reasons explained above, the court denies defendant's Motion for Directed Verdict as a Matter of Law at the Close of Plaintiffs' Evidence.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion for Directed Verdict as a Matter of Law at the Close of Plaintiffs' Evidence (Doc. 461) is denied.

**IT IS SO ORDERED.**

**Dated this 19th day of February, 2019, at Kansas City, Kansas.**

                                               **s/ Daniel D. Crabtree**
                                               **Daniel D. Crabtree**
                                               **United States District Judge**